UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADRIENNE BUSH,

      Plaintiff,

v.

LUMILEDS, LLC a/k/a PHILIPS
AUTOMOTIVE LIGHTING,
THOMAS STOLZENFELD, and
RHONDA MCKEE-HESSEL,

      Defendants.

Case No. 16-11761
Honorable Laurie J. Michelson
Magistrate Judge Elizabeth A. Stafford

---

**OPINION AND ORDER ACCEPTING THE MAGISTRATE JUDGE'S RECOMMENDATIONS [25], DISMISSING COMPLAINT [1], DENYING MOTION TO AMEND [21], AND GRANTING LEAVE TO FILE AMENDED COMPLAINT**

---

In 2010, Plaintiff Adrienne Bush began working for Defendant Lumileds, LLC (then Philips Automotive Lighting). After two years without issue, Defendant Thomas Stolzenfeld and Bush's supervisor, Defendant Rhonda McKee-Hessel, allegedly began treating Bush differently than other Lumileds employees because she was African-American and female. They also allegedly began retaliating against her for challenging discriminatory practices at Lumileds. By the end of 2015, Bush had filed three charges with the U.S. Equal Employment Opportunity Commission. In January 2016, Lumileds terminated Bush's employment. This lawsuit followed.

Bush's *pro se* complaint is not very detailed or very organized. (*See* R. 1.) As such, Defendants ask the Court to dismiss the complaint or to direct Bush to file a more definitive statement. (R. 13.) Bush moves to amend her complaint; her motion includes a more detailed and more organized proposed amended complaint. (R. 21.) Defendants oppose Bush's motion on the grounds that her proposed claims are not exhausted or that adding them to her complaint would

be futile because they fail to state a claim for relief. (R. 22.) The Court has referred all pretrial matters to Magistrate Judge Elizabeth A. Stafford. (R. 14, 15.) Magistrate Judge Stafford recommends granting Defendants' motion to dismiss the complaint and denying Bush's motion to amend. (R. 25.) Bush objects. (R. 26.) For the reasons that follow, the Court accepts the Magistrate Judge's recommendations, but will grant Bush leave to file a *final* amended complaint.

## I.

## A.

Lumileds hired Bush in June 2010 to work as an administrative assistant on a contract basis. (R. 21, PID 205.)[1] In 2011, the company's President, Dennis Samfilippo, promoted Bush to the position of "Sales Administrator" for the marketing and sales teams. (R. 21, PID 205.) In June 2012, Bush was offered "a lead customer service position," but it was with one of the companies that Lumileds contracted with—not Lumileds directly. (R. 21, PID 205.) Bush declined the position. (*Id.*) "From this point forward is when retaliation and harassment began." (*Id.*)

In June 2012, Thomas Stolzenfeld, the Director of Operations, and Bush's supervisor, Rhonda McKee-Hessel, decided to terminate Bush's contract, effective August 2012. (R. 21, PID 206.) This was despite that Bush was not working directly in Stolzenfeld and McKee-Hessel's department. (*Id.*) Samfilippo, however, asked Bush to stay on as part of both Operations and

---

[1] The Court presents as fact the non-conclusory allegations of Bush's complaint (R. 1) as supplemented by the allegations in her proposed amended complaint (R. 21). It assumes Bush's allegations are true because Defendants have moved to dismiss the complaint pursuant to Rule 12(b)(6), *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and because they have argued that the proposed amendment is futile, *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) ("A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.").

Sales. (R. 21, PID 206.) In November 2012, Samfilippo gave Bush a raise. And, in March 2013, Lumileds hired Bush as a direct employee. (R. 21, PID 207.)

In November 2013, Stolzenfeld arranged for some of Bush's marketing duties to be taken from her. (R. 21, PID 207.) This was so that Lumileds could hire an "expat spouse" of a Lumileds employee. (*Id.*) Although this new hire merely did Bush's former marketing duties, Lumileds paid her more than Bush. (*Id.*)

In December 2013, Bush reached out to Alyssa Gorski in Lumileds' human resources department regarding Stolzenfeld's conduct at a meeting. (R. 21, PID 207.) At that meeting, Stolzenfeld had "threaten[ed] [Bush] with insubordination" because Bush had complained about "wage discrepancies and additional biases which le[d] to the whistleblower complaint." (*Id.*) Bush's whistleblower complaint against McKee-Hessel and Stolzenfeld was for "Equal Pay/Compensation discrimination and racial bias." (*Id.*) Bush was offered a settlement and general release, but certain people at Lumileds, including Gorski, told her she was a "valued employee." (R. 21, PID 208.) As such, Bush agreed to move forward. (*Id.*)

In February 2014, Bush was given a negative performance review. (R. 21, PID 208.) She was also denied a raise and a bonus. (*Id.*) Ninety-five percent of Bush's duties were for Sales, and Bush was told that she did not receive a bonus because Sales did not reach their target numbers. (*Id.*) Still, Bush "technically reported" to Operations. (*Id.*) Further, "the other" Sales Administrator who worked for both Sales and Operations received her bonus. (*Id.*)

In July 2014, Bush was called into a meeting where she was told that she would have to take half of McKee-Hessel's work. (R. 21, PID 209.) Bush asked for increased pay due to the increased work (McKee-Hessel was making more than Bush), but the request was denied. (*Id.*) Bush also asked whether McKee-Hessel's work could be split between her and "the other" Sales

3

Administrator, a Caucasian female. (*Id.*) Stolzenfeld responded that "this was not meant for . . . her." (*Id.*)

"From that date moving forward," McKee-Hessel began giving Bush assignments with unreasonable deadlines. (R. 21, PID 209.) Bush worked overtime to complete the assignments. (*Id.*) When McKee-Hessel saw that Bush had logged overtime, she told Bush that Lumileds would not pay overtime and that she would instead have to accept compensatory time off. (*Id.*) "This [was] the same practice used on the Customer Service team[,] which [was] also primarily African American." (R. 21, PID 210.)

In January 2015, Bush emailed Stolzenfeld, McKee-Hessel, and others about a flexible work schedule so she could take a class only offered during the day. (R. 21, PID 210.) Bush also apparently requested that the class be covered by Lumileds' tuition reimbursement program. (*Id.*) Stolzenfeld declined the request even though Bush's other superiors were fine with it. (*Id.*) Further, Stolzenfeld "ha[d] approved individuals with similar request[s] or even to work from home . . . when they ha[d] doctors' appointments or an ailing parent or child. There were two Caucasian individuals during the same time that may have only worked in the office 2 or 3 times a week while taking care of another individual at home." (R. 21, PID 209–10.)

In the summer of 2015, an issue arose with Bush's mid-year performance review.

It started in July when McKee-Hessel met with Bush regarding her review. (R. 21, PID 211.) Apparently, during the review, McKee-Hessel told Bush that some individuals had complained about Bush. (*Id.*) After her review, Bush "discover[ed] that the individuals were not complaining about [her] at all and that it was a misunderstanding on [McKee-Hessel's] part." (*Id.*)

4

On August 7, 2015, Bush emailed McKee-Hessel and Cynthia Bergallo in human resources for approval to take a class in the fall. (R. 21, PID 212.) McKee-Hessel approved the request. (*Id.*) About ten days later, McKee-Hessel told Bush that her mid-year review was available for approval through Lumileds' computer-based portal. (R. 21, PID 212.) Bush did not approve the review but instead submitted a disagreement with it. (*See id.*) Then, two weeks later, on September 1, 2015, McKee-Hessel and Bergallo informed Bush that her tuition reimbursement was being rescinded. (R. 21, PID 212.) When Bush asked to speak to someone higher up, Bergallo told Bush that the "education assistance program is a privilege and it can be rescinded at any time." (*Id.*)

Two days later, Lumileds posted Bush's Sales Administrator position on a job website (monster.com). (R. 21, PID 213.) In an email to a sales manager, with McKee-Hessel copied, Bush inquired about the posting. (*Id.*) She was told that she could apply for the position if she met the qualification requirements. (R. 21, PID 213.) But it was known that Bush was in the process of completing her Bachelor's degree, which was one of the qualification requirements. (*Id.*) In October 2015, when the job was filled, the new-hire email did not go to the whole organization as per usual; it was only sent to select individuals excluding Bush. (*Id.*)

On September 8, 2015, Bush noticed that the Sales Administrator had not put one of Bush's work-from-home days on the calendar. (*Id.*) Although Bush had informed McKee-Hessel that she had emailed the Sales Administrator about the work-from-home day the week before, McKee-Hessel "immediately advised [Bush] that the Sales Admin did not get the email" without first verifying Bush's claim. (*Id.*)

That day, Bush filed the first of three charges with the Equal Employment Opportunity Commission. (*See* R. 1, PID 9.) Bush checked boxes corresponding to "race" discrimination and

"retaliation." (*Id.*) Bush asserted a claim of retaliation: after she disagreed with her performance review, Phillips rescinded her tuition reimbursement. (*Id.*)

About six weeks later, on October 23, 2015, McKee-Hessel sent Bush a meeting notice for October 26, 2015 titled "Performance Review." (R. 21, PID 214.) When she arrived at the meeting with McKee-Hessel, Samfilippo (the President), and Bergallo (from HR), Bush was told that the purpose of the meeting was to discuss a performance improvement plan. (R. 21, PID 215.) Bush asked "if the team was aware that [she] was currently scheduled for mediation" with the EEOC. (R. 21, PID 215; *see also* R. 1, PID 10.) Both Samfilippo and McKee-Hessel said that they were unaware. (R. 21, PID 215.) Bergallo, however, stated that she was aware and that Bush did not need to sign anything but only needed to listen to what they had to say. (*Id.*) As for the performance issues brought up at the meeting, Bush had previously received a raise despite some of them and others were "frivolous accusations." (*Id.*)

On November 23, 2015, Bush filed a second charge with the EEOC. (R. 1, PID 11.) Like the prior charge, Bush checked boxes corresponding to discrimination based on "race" and "retaliation." (*Id.*) Bush charged that she was placed on a performance improvement plan in retaliation for filing the September 2015 charge. (*Id.*)

In December 2015, Stolzenfeld sent out an email regarding a holiday lunch but did not include Bush on the email. (R. 21, PID 215–16.)

On December 14, 2015, Bush filed a third charge with the EEOC. (R. 1, PID 12.) As with the prior two charges, she checked boxes for discrimination based on "race" and "retaliation." (*Id.*) Bush alleged, "[a]fter I protested my review, including complaining of racial discrimination, my job was posted . . . . By September 1, 2015, my tuition approval was rescinded . . . . I have

also been forced to use vacation time instead of flex time, which is a benefit that is supposed to be available to all staff." (*Id.*)

In January 2016, Bergallo twice offered Bush a "monetary settlement" in exchange for Bush dropping her EEOC charges. (R. 21, PID 216.) One offer was made through the EEOC and the other was made directly to Bush. (*Id.*) Bush declined. (*Id.*)

On January 29, 2016, Bush received a Worker Adjustment and Retraining Notification Act letter informing her that she would be terminated in 60 days. (R. 21, PID 216.) Bush's last day was March 31, 2016. (*Id.*) This lawsuit followed.

**B.**

Bush's complaint provides a terse bulleted list of her claims without many dates (*see* R. 1, PID 10) and attaches three EEOC charges (R. 1, PID 9, 11, 12). As such, Defendants ask the Court to dismiss the complaint, or, in the alternative, to direct Bush to file a more definitive statement. (R. 13.) Buh moves to amend her complaint (R. 21), which Defendants oppose (R. 22). Magistrate Judge Stafford recommends granting Defendants' motion to dismiss and denying Bush's motion to amend. (*See* R. 25, PID 263.)

**II.**

Although a Magistrate Judge must issue a report and recommendation on a motion to dismiss, *see* 28 U.S.C. § 636(b)(1)(B), most courts in the Sixth Circuit treat motions to amend as non-dispositive motions that a magistrate judge may simply decide, *Sims v. United States*, No. 3:05-CR-121-CRS, 2015 WL 2338539, at *1 (W.D. Ky. May 13, 2015); *see also* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). In this case, likely because the claims of Bush's proposed amended complaint are more developed versions of the ones asserted in her complaint (*see* R. 1, PID 10), the Magistrate Judge issued a single report and recommendation addressing both

7

motions. As such, the Court will review the entirety of her report and recommendation *de novo*. *See* 28 U.S.C. § 636(b)(1).

## III.

## A.

The Magistrate Judge found that Bush had failed to administratively exhaust any claims of discrimination or retaliation under Title VII based on (1) events that occurred prior to 2015, (2) her sex, and (3) her termination in 2016. (R. 25, PID 269.)

If the inquiry were limited solely to the three EEOC charges that Bush attached to her complaint (R. 1, PID 9, 11, 12), the Court would agree with the Magistrate Judge. As a general rule, a plaintiff cannot bring a Title VII claim to federal court unless (1) the claim was included in her EEOC charge or (2) the claim relates to, or grows out of, the factual allegations in the charge. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (citing 42 U.S.C. § 2000e-5(f)(1); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)). And a review of the three EEOC charges attached to Bush's complaint reveals that she only complained of conduct that occurred in 2015 and that she did not assert claims of sex discrimination. The September 2015 charge is limited to Lumileds' alleged retaliation or discrimination after Bush did not approve her performance review in August 2015. (R. 1, PID 9.) As for the type of discrimination, Bush checked only the boxes for discrimination based on "race" and "retaliation"—not for "sex." (*Id.*) And the September 2015 charge concludes by referencing only racial discrimination: "Due to being one of the very few African American employees there I know I am held to different standards than the Caucasian employees. I believe I was denied my tuition in retaliation of going to a protected activity due to my race (African American)[.]" (R. 1, PID 9.) In filing the November 2015 charge, Bush also did not check the box for "sex" discrimination and her only

assertion was that Lumileds put her on a performance improvement plan because she had filed the September 2015 charge. (R. 1, PID 11.) In submitting the December 2015 charge, Bush alleged three wrongful acts: that Lumileds posted her job, rescinded her tuition approval, and forced her to use vacation time instead of flextime. (*Id.*) But each of these events occurred in 2015. (*See* R. 21, PID 209–15.) Further, like the prior two charges, Bush only checked boxes corresponding to "race" and "retaliation." And the December 2015 charge concludes in the same way that the September 2015 charge does—by asserting racial discrimination. (R. 1, PID 12.) So if the inquiry were limited to these three charges, the Court would agree with the Magistrate Judge that Bush did not exhaust any claims based on her sex, events prior to 2015, or her termination in 2016.

The inquiry, however, may not be so limited. "When the EEOC investigation of one charge *in fact* reveals evidence of a different type of discrimination against the plaintiff, a lawsuit based on the newly understood claim will not be barred." *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998); *accord Johnson v. Cleveland City Sch. Dist.*, 344 F. App'x 104, 109 (6th Cir. 2009). And, as Bush alleged in her proposed amended complaint, there was a scheduled mediation with the EEOC. (R. 21, PID 215; *see also* R. 1, PID 10.) In her objections, Bush further asserts, "During mediation, it was discovered that all my charges were not being addressed, at which time I made the decision to amend my charges to include all that had already been provided to the EEOC. Included was the history and events that would fall into the time allowed to file a charge with the EEOC." (R. 26, PID 276; *see also* R. 26, PID 278.) Bush's objections also reference an EEOC "investigation." (R. 26, PID 279.) Thus, it is possible that issues beyond those raised in Bush's three EEOC charges are exhausted. *See Davis*, 157 F.3d at 463.

9

As of now, however, it remains just that—a possibility. Bush's vague references to an investigation and mediation require the Court to engage in undue speculation about what issues beyond the formal charges, if any, were exhausted via investigation and mediation. Thus, the Court finds that Bush's claims of discrimination or retaliation under Title VII based on her sex, pre-2015 events, and her termination are unexhausted. But the claims based on pre-2015 events and Bush's termination (but not her sex) are dismissed *without prejudice*. As will be explained below, Bush will be permitted to file a *final* proposed amended complaint. In that complaint, she may set forth additional facts indicating that claims other than those presented in her three charges are exhausted.[2]

## B.

The Court thus turns to the question of whether allowing Bush to amend would be futile because her proposed claims fail to state a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). The proposed amended complaint sets out 11 numbered counts, but some have several claims.

---

[2] In their response to Bush's objections, Defendants point out that issues and arguments raised for the first time in objections should not be considered by the district court. (R. 27, PID 325–26 (citing cases).) But Bush indicated in her complaint and proposed amended complaint that there was an EEOC mediation. (R. 1, PID 10; R. 21, PID 215.) As such, Bush has simply expanded on that point in her objections. Moreover, considerable persuasive authority indicates that exhaustion is an affirmative defense. *Fernandez v. Rose Trucking*, 429 F. App'x 145, 146 (3d Cir. 2011); *Rembisz v. Lew*, 590 F. App'x 501, 503 (6th Cir. 2014); *Lockett v. Potter*, 259 F. App'x 784, 786 (6th Cir. 2008); *Bibbs v. Sheriff of Cook Cty.*, 618 F. App'x 847, 849 (7th Cir. 2015); *Miles v. Bellfontaine Habilitation Ctr.*, 481 F.3d 1106, 1107 (8th Cir. 2007); *Daniels v. Donahoe*, — F. App'x —, No. 14-56967, 2016 WL 5115383, at *1 (9th Cir. Sept. 21, 2016); *cf. Adamov v. U.S. Bank Nat. Ass'n*, 726 F.3d 851, 855–56 (6th Cir. 2013) (holding that Title VII exhaustion is not jurisdictional); *but see Logsdon v. Turbines, Inc.*, 399 F. App'x 376, 379 n.2 (10th Cir. 2010) (noting Tenth Circuit's minority position). An affirmative defense involving factual issues such as what the EEOC investigated seems more amenable to an early, limited summary-judgment motion than a motion to dismiss. Accordingly, the Court believes it is proper to consider the allegations in Bush's objections regarding exhaustion.

The Court will address Bush's retaliation claims together and then address her discrimination and harassment claims together.

## 1.

Claims three, four, five, six, seven, nine, ten, and eleven of Bush's proposed amended complaint all include the label "retaliation" (sometimes along with the label "discrimination" or "harassment"). The Court construes these as retaliation claims under Title VII. *See Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991) ("[A] pro se complaint will be liberally construed in determining whether it fails to state a claim upon which relief could be granted.").

Title VII prohibits an employer from retaliating against an employee "because [the employee] has opposed" a practice prohibited by Title VII or "because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e–3(a).[3]

*Retaliation: Counts Three, Four, and Five.* In these three proposed counts, Bush implies that Defendants retaliated by (1) giving her a negative performance review and denying her a raise and bonus in February 2014 (R. 21, PID 208), (2) assigning her additional work in the summer of 2014 (R. 21, PID 209), and (3) refusing to approve her request for tuition reimbursement and a flextime schedule in January 2015 (R. 21, PID 210).

---

[3] Likely because Defendants did so, the Magistrate Judge relied on summary-judgment cases and asked whether Bush had pled the elements of a *prima facie* case of discrimination or retaliation. (*See* R. 25, PID 270–71.) But, at the pleading stage, a plaintiff need not state a *prima facie* case under *McDonnell Douglas*. *See Crowder v. Railcrew Xpress*, 557 F. App'x 487, 492 (6th Cir. 2014) ("The district court held that Crowder's complaint 'f[ell] short of her burden to establish a prima facie case for her retaliation claims.' This was error."); *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) ("The district court's requirement that Keys's complaint establish a prima facie case under *McDonnell Douglas* and its progeny is contrary to Supreme Court and Sixth Circuit precedent."). As such, this Court simply asks whether it is plausible that Lumileds violated Title VII, i.e., whether it intentionally discriminated against Bush because of her race or sex or whether it retaliated against Bush because she opposed a discriminatory employment practice. *See Keys*, 684 F.3d at 609.

The alleged protected conduct giving rise to these three alleged retaliatory acts appears to be Bush's December 2013 whistleblower complaint against Stolzenfeld and McKee-Hessel regarding "Equal Pay/Compensation discrimination and racial bias." (*See* R. 21, PID 207.) As suggested by her proposed amended complaint but made clearer in her objections, when Stolzenfeld hired the "expat spouse" of a Lumileds employee, this new hire was given only some of Bush's duties but was paid more than Bush. (R. 21, PID 207; *see also* R. 26, PID 281.) Bush then got additional assignments from McKee-Hessel, and when Bush asked for increased pay, Stolzenfeld accused Bush of insubordination. (R. 26, PID 282.) And, as clarified by Bush's objections, this accusation is what caused Bush to file the whistleblower complaint. (*Id.*; *see also* R. 21, PID 208.) Although Lumileds offered Bush a settlement and release in response to the complaint, Bush preferred to continue at Lumileds. (R. 21, PID 208.) In her objections (but not in her complaint or proposed amended complaint) Bush asserts that as part of the agreement to move forward, her whistleblower complaint was to be placed in certain personnel files. (R. 26, PID 292.) This allegedly did not occur. (*Id.*) Bush also makes clear for the first time in her objections that the new hire was Anna Arends, a Caucasian female. (R. 26, PID 281.)

In their motion to dismiss, Defendants did not specifically address Bush's claims of retaliation based on the whistleblower complaint and conduct in February 2014, summer of 2014, or January 2015. (*See generally* R. 22.) The Magistrate Judge did not explicitly address these claims either. (*But see* R. 25, PID 265 (indicating deficiencies in some of Bush's allegations).) Even so, the Court questions whether Bush has adequately pled the causal connection between her whistleblower complaint and the subsequent events—especially those occurring six months or a year later. But given that the negative performance review and denial of a raise and bonus in February 2014 are close in time to the December 2013 whistleblower

12

complaint, *see Haji v. Columbus City Sch.*, 621 F. App'x 309, 313 (6th Cir. 2015); *Seeger v. Cincinnati Bell Tel. Co.*, LLC, 681 F.3d 274, 283 (6th Cir. 2012), and that the whistleblower complaint may have challenged unequal pay based on race, the Court will permit Bush to file a *final* amended complaint to plead this retaliation claim in more detail. Defendants can then specifically address this claim, along with the alleged retaliatory acts in summer of 2014 and January 2015.

*Retaliation: Counts Six and Seven.* In count six of her proposed amended complaint, Bush alleges that because she disapproved of her 2015 mid-year evaluation, McKee-Hessel and, perhaps, Bergallo, retaliated against her by rescinding her tuition reimbursement. (R. 21, PID 212.) In count seven, Bush alleges that her job was posted online in retaliation for disapproving her evaluation. (R. 21, PID 213; *see also* R. 1, PID 9, 12.)

Defendants argue that "voicing disagreement with a performance evaluation does not constitute protected activity for purposes of a retaliation claim under Title VII." (R. 22, PID 227.) (It appears that the Magistrate Judge did not explicitly address these two claims of retaliation. (*See* R. 25, PID 272.))

Defendants' argument does not account for the fact that in her December 2015 EEOC charge, Bush stated that she did more than just protest her evaluation: "After I protested my review, *including complaining of racial discrimination*, my job was posted and I was informed I could re-apply for my job." (R. 1, PID 12 (emphasis added).) Because the emphasized language leaves one to speculate about what, precisely, Bush told Lumileds, the Court questions whether it is sufficient to plead opposition to an unlawful employment practice. *Cf. Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 646 (6th Cir. 2015) (finding, where employee said "hostile work environment" to his manager in a "context [that] objectively reveal[ed] that the

13

employee is using the expression to complain about repeated abusive discriminatory comments or treatment," that mere reference to "hostile work environment" amounted to Title-VII-protected activity). But even if the Court were to find that an employee's allegation that she "complained of racial discrimination" to her employer is too conclusory to plead protected activity, it would not preclude Bush from restating this claim. Defendants have not addressed this language and, as stated, Bush will be permitted to restate her retaliation claim based on the whistleblower complaint. Thus, the Court will permit Bush to also plead additional facts regarding her "complain[t] of racial discrimination" in her final amended complaint.

*Retaliation: Count Nine.* Bush's ninth proposed claim asserts that after she filed her EEOC complaint on September 8, 2015, Defendants—or, at least, McKee-Hessel—retaliated by placing her on a performance improvement plan on October 26, 2015. (R. 21, PID 214.)

Defendants argued (R. 22, PID 226), and the Magistrate Judge agreed (R. 25, PID 272), that this claim is implausible because performance improvement plans are not adverse employment actions that give rise to liability under Title VII.

This Court agrees. Generally, "a negative performance evaluation does not constitute an adverse employment action, unless the evaluation has an adverse impact on an employee's wages or salary." *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 322 (6th Cir. 2007); *see also Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 789 (6th Cir. 2000) ("At a minimum, the plaintiff must point to a tangible employment action that she alleges she suffered, or is in jeopardy of suffering, because of the downgraded evaluation."). And here, neither Bush's complaint nor her proposed amended complaint identify any tangible effect from being put on a performance improvement plan.

In her objections, Bush asserts, "[d]iscussions about PIPs at Lumileds normally end with termination." (R. 26, PID 286.) But this allegation does not foreclose the possibility that had Bush met the plan's goals, her employment would have continued. *See Agnew v. BASF Corp.*, 286 F.3d 307, 310 (6th Cir. 2002) (finding that performance improvement plan was not an adverse action under Michigan's equivalent to Title VII where plaintiff claimed that "termination would have been the inevitable result" of the plan, but termination "was contingent on future developments, rather than being a present plan or decision"). Further, Bush states in her objections that McKee-Hessel had drafted the performance improvement plan *before* Bush filed her first charge with the EEOC. (R. 26, PID 286.) As such, even if the performance improvement plan was an adverse action, it does not appear to have been motivated by the EEOC charge.

*Retaliation: Count Ten.* In this proposed count, Bush asserts that Stolzenfeld retaliated against her in mid-December 2015 by leaving her off two group emails about a Christmas luncheon. (R. 21, PID 215–16.)

But Bush does not allege that she was actually precluded from the luncheon—only that she was not notified of it. Even granting that Stolzenfeld intentionally left Bush off the emails, that conduct does not state a plausible claim under Title VII. *See Smith v. City of Salem, Ohio*, 378 F.3d 566, 575–76 (6th Cir. 2004) ("A 'bruised ego,' a 'mere inconvenience or an alteration of job responsibilities' is not enough to constitute an adverse employment action.").

*Retaliation: Count Eleven.* Here, Bush apparently implies that she was terminated in retaliation for filing charges with the EEOC. As noted, it is unclear whether this claim is exhausted. Moreover, Defendants did not construe this as a retaliation claim and thus did not argue that adding it would be futile. (R. 22, PID 227.) Accordingly, when Bush files her final amended complaint, she may re-plead this retaliation claim in greater detail.

**2.**

Counts one, two, four, six, eight, nine, and eleven of Bush's proposed amended complaint all include the label "harassment" or "discrimination" (sometimes with other labels). In addition, in proposed count five, Bush claims that Stolzenfeld treated her differently from two Caucasian male employees. The Court will construe these eight proposed counts as asserting claims of race or sex discrimination made unlawful by Title VII. *See Jourdan*, 951 F.2d at 110.

Under Title VII, an employer is prohibited from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

*Discrimination: Counts Two, Eight, and Nine*. In proposed count two, Bush pleads that Stolzenfeld accused her of insubordination. (R. 21, PID 207–08.) In proposed count eight, Bush complains that McKee-Hessel unjustifiably took another Sales Administrator's side on a scheduling dispute. (R. 21, PID 214.) (In her objections, Bush makes clear that this Sales Administrator is Caucasian.) In proposed count nine, Bush asserts that the bases for her October 2015 performance improvement plan were "frivolous." (R. 21, PID 215.)

Adding these claims would be futile. Like Stolzenfeld's act of leaving Bush off the emails, the scheduling dispute, even if handled in a discriminatory manner, is too trivial to give rise to liability under Title VII. *See Smith*, 378 F.3d at 575–76. The same is true regarding Stolzenfeld's accusation. And the Court has already explained that—without collateral effects—being placed on a performance improvement plan is not an adverse action; it follows that false justifications for the plan also do not trigger Title VII liability.

*Discrimination: Counts One and Four*. In their opposition to Bush's motion to amend, Defendants did not specifically address Bush's claims of discrimination as alleged in these two

proposed counts. For that reason, and because they are not obviously implausible, Bush will be permitted to reassert these claims of discrimination in her final amended complaint.

In proposed count one, Bush complains that the "expat spouse" of a Lumileds employee performed only a subset of her duties yet was paid more. (R. 21, PID 207; *see also* R. 26, PID 281.) Defendants and the Magistrate Judge rightly did not treat this as a claim of race or sex discrimination because Bush alleged that the new hire was female and did not allege that the new hire was a different race. (R. 21, PID 207.) But, as noted, in her objections, Bush asserts that Arends is Caucasian. (R. 26, PID 281.) If it is in fact true that Arends performed only a subset of Bush's former tasks but was paid more, it could be plausible to infer that the pay was discriminatory. *See Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 412 (6th Cir. 2008) ("The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered similarly-situated; rather, as this court has held [that] the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in all of the *relevant* aspects." (internal quotation marks and citation omitted) (emphasis in original)). (And, as will be discussed below, it may be that Bush can establish this inference based on the totality of Stolzenfeld's and McKee-Hessel's conduct.) As such, though adding the claim as stated in her proposed amended complaint would be futile, Bush may restate this claim in greater detail in her final amended complaint.

In proposed count four, Bush alleges that, in July 2014, she asked Stolzenfeld whether the extra work from McKee-Hessel could be split between herself and the other Sales Administrator, a Caucasian female. (R. 21, PID 209.) Stolzenfeld responded, "no that this was not meant for her." (*Id.*) Bush additionally alleges that from that point on, McKee-Hessel gave her tasks with unreasonable delivery dates, requiring her to work overtime. (*Id.*) Although only a

17

weak inference of discriminatory motive can be inferred from the fact that two employees of different races with the same job title were given disproportionate work, the inference is not plainly unreasonable. For this reason, and because Defendants have not specifically addressed this claim, the Court will allow Bush to restate this claim in greater detail in her final amended complaint.

*Discrimination: Counts Five, Six, and Eleven.* In these proposed counts, Bush alleges a number of acts that—when considered separately—simply do not give rise to a reasonable inference of race or sex discrimination.

In proposed count five, Bush asserts that Stolzenfeld (and possibly McKee-Hessel) denied her a flextime schedule and tuition reimbursement while granting those benefits to two "Caucasian individuals." (*See* R. 21, PID 209–10.) But, as the Magistrate Judge correctly reasoned (R. 25, PID 271), Bush's proposed amended complaint does not account for the possibility that there were non-racial differences between her and the two Caucasian male employees that justified different treatment (e.g., the Caucasian male employees were not Sales Administrators, they worked at Lumileds longer, or they performed better). Not only does the proposed amended complaint leave open these possibilities, it states a material difference between her request and that of the Caucasian male employees: the use of flextime to take care of people at home. Accordingly, it is not reasonable to infer a discriminatory motive from the mere fact that Bush was denied flextime and tuition reimbursement while two Caucasian male employees were not.

In proposed count six, Bush asserts that McKee-Hessel "made many false statement[s]" during her July 2015 performance review. (R. 21, PID 211.) Other than what is alleged

18

elsewhere, however, Bush does not identify a specific discriminatory motive for the false statements.[4]

In proposed count eleven, Bush asserts that on January 29, 2016, she was given a WARN letter informing her that she would be terminated in 60 days. (R. 21, PID 216.) Bush asserts that "no other person(s) at the Farmington Hills location was given this notice." (R. 21, PID 216.) But, as Defendants point out (R. 22, PID 227), Bush does not plead facts indicating that anyone else at the Farmington Hills location was similarly situated. Notably, Bush was on a performance improvement plan. Accordingly, the mere fact that Bush was given a WARN letter but other employees were not does not permit the reasonable inference that Bush was given the letter because of her race or sex.

*Actions in Aggregate*. For the reasons stated, the Court agrees with the Magistrate Judge that it would be futile to allow Plaintiff to add claims of sex discrimination. With respect to the race discrimination claims, although standing on their own they do not permit an inference of discriminatory motive, and others at best permit a weak inference, if Defendants move to dismiss Bush's final amended complaint, they should also address Bush's claims in aggregate. While favoring an employee of one race over another on one or two occasions may not permit a reasonable inference of discrimination, repeated acts might. *Cf. Rachells v. Cingular Wireless Employee Servs., LLC*, 732 F.3d 652, 665 (6th Cir. 2013) ("While evidence of a discriminatory atmosphere may not be conclusive proof of discrimination against an individual plaintiff, such evidence does tend to add 'color' to the employer's decisionmaking processes and to the

---

[4] False statements in a performance review might not amount to an adverse action giving rise to Title VII liability. But here, Bush has alleged that she rejected her performance review because of the false statements. And, the proposed amended complaint permits the reasonable inference that, as a result of rejecting her performance review, her tuition reimbursement was rescinded.

influences behind the actions taken with respect to the individual plaintiff."); *Jackson v. Quanex Corp.*, 191 F.3d 647, 661 (6th Cir. 1999) ("[A] court should not examine each alleged incident of harassment in a vacuum, as what may appear to be a legitimate justification for a single incident of alleged harassment may look pretextual when viewed in the context of several other related incidents." (internal quotation marks and alterations omitted)).

To this end, the Court notes that Bush's proposed amended complaint alleges that McKee-Hessel and Stolzenfeld (and to a more limited extent, Bergallo) committed a number of acts that negatively affected Bush's employment and describes several instances where she was treated differently than "the other" Sales Administrator. In her objections, Bush makes explicit that that this "other" Sales Administrator was Marjorie Marion, a Caucasian female who was hired in June 2012. (R. 26, PID 279.) Bush also asserts that, in June 2012, McKee-Hessel and Stolzenfeld tried to terminate her contract even though she had been doing a "stellar" job and had more seniority than Marion. (R. 26, PID 280.) And Bush's objections say that, around this time, McKee-Hessel and Stolzenfeld wanted Bush to take a job outside of Lumileds (with a company that Lumileds contracted with), but never offered this job to Marion. (R. 26, PID 280.) Bush also claims that, in November 2012, when both she and Marion were contract employees, McKee-Hessel responded to inquiries from Marion's contracting house so that Marion could receive a raise, but did not do the same for Bush. (R. 26, PID 280–81.)

It may be that none of Bush's alleged acts of discrimination separately permit the reasonable inference that the action was motivated by Bush's race. But this would not necessarily preclude the possibility that a pattern of conduct permits the discriminatory inference.

**C.**

The Magistrate Judge agreed with Defendants' claim that Bush cannot sue McKee-Hessel or Stolzenfeld individually under Title VII. (R. 25, PID 272 (citing *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997)).

Bush objects to this finding, citing *Genaro v. Cent. Transport, Inc.*, 703 N.E.2d 782 (Ohio 1999), and *Comiskey v. Auto. Industries Action Grp.*, 40 F. Supp. 2d 877 (E.D. Mich. 1999). (R. 26, PID 287.)

The Court will overrule Bush's objection. Her two cases say that supervisors may be sued under *state* analogs to Title VII. *Genaro*, 703 N.E.2d at 785 (Ohio law); *Comiskey*, 40 F. Supp. 2d at 891 (Michigan law). But, as far as Title VII goes, the Court agrees with the Magistrate Judge that Bush's complaint is limited to Lumileds. *Sam Han v. Univ. of Dayton*, 541 F. App'x 622, 629 (6th Cir. 2013); *Wathen*, 115 F.3d at 404–05.

**IV.**

For the foregoing reasons, the Court accepts the Magistrate Judge's recommendations and will DENY Bush's motion to amend her complaint in the manner that she has proposed in that motion (R. 21) and DISMISS WITHOUT PREJUDICE Bush's complaint (R. 1).

The Court grants Bush until May 2, 2017 to file a *final* amended complaint. This final amended complaint must comply with all of the following:

- McKee-Hessel, Stolzenfeld, or any other Lumileds employee must not be named as a defendant;

- the counts should track those of the proposed amended complaint; for example, count one of the final amended complaint should correspond to the claim (or claims) alleged in

21

count one of the proposed amended complaint (R. 21) but include additional factual allegations addressing the deficiencies identified in this opinion;

- the final amended complaint may not include claims that Lumileds retaliated or discriminated by (1) placing Bush on a performance improvement plan that did not result in any loss of employment privileges, (2) not including Bush on emails about the Christmas luncheon, (3) favoring Marion on the scheduling issue, or (4) asserting insubordination;

- the final amended complaint also may not include any claims that Lumileds retaliated or discriminated against Bush based on her sex because the proposed amended complaint reveals that re-pleading any such claims would be futile;

- to the extent that the final amended complaint includes claims based on Bush's pre-2015 events or Bush's termination, Bush must plead facts pertaining to the EEOC investigation she referenced in her objections and proposed amended complaint;

- the factual allegations and legal theories must meet the reasonable-belief requirements of Federal Rule of Civil Procedure 11.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
U.S. DISTRICT JUDGE

Dated: March 30, 2017

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 30, 2017.

s/Keisha Jackson
Case Manager