UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADRIENNE BUSH,                              Civil Action No.: 16-11761
                                            Honorable Laurie J. Michelson
                        Plaintiff          Magistrate Judge Elizabeth A. Stafford

v.

LUMILEDS LLC, aka
PHILIPS AUTOMOTIVE
LIGHTING N.A.,

                 Defendant.

_____/

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 69]**

## I.    Introduction

Plaintiff Adrienne Bush's amended complaint alleges that Defendant

Lumileds LLC, aka Philips Automotive Lighting N.A., [1] discriminated and

retaliated against her, in violation of Title VII and Michigan's Elliott-Larsen

Civil Rights Act.  [ECF No. 30].[2]  Lumileds has moved for summary

judgment.  [ECF No. 69].  Bush filed a response, and Lumileds filed a reply.

_____

[1] For the sake of consistency, this report and recommendation will refer to
defendant as "Lumileds" even when cited documents refer to "Philips."
[2] On June 28, 2016, Bush filed a motion for leave to file a second amended
complaint. [ECF No. 85].  This report and recommendation does not
address that motion, or her proposed amended complaint.

[ECF Nos. 79, 82].  The Honorable Laurie J. Michelson referred this matter

to the undersigned for all pretrial motions, including a report and

recommendation on dispositive matters.  [ECF No. 15].  For the reasons

that follow, the Court recommends that Lumileds' motion for summary

judgment be **GRANTED.**

## II.    Background

Bush, an African-American, worked for Lumileds at its Farmington

Hills location through a temporary agency (Office Team) until March 2013,

when she was hired for a permanent position.  [ECF No. 30, PageID.374;

ECF No. 69-3, PageID.1347].  From March 2013 until her lay off three

years later, Bush's direct supervisors were Rhonda McKee-Hessel, the

customer services supervisor, and Thomas Stolzenfeld, the director of

operations.  [ECF No. 69-36, PageID.1699-1709].  Bush's amended

complaint alleges that McKee-Hessel, Stolzenfeld and others at Lumileds

discriminated and retaliated against her in several ways.

Bush alleges that McKee-Hessel and Stolzenfeld discriminated

against her during her hiring process.  [ECF No. 30, PageID.379-82].  She

then alleges that Lumileds hired a white woman to perform her same duties

in November 2013, and that the white woman was paid more.  [*Id.*,

PageID.382-82].  Bush also claims that she filed a whistleblower complaint

2

in late 2013, and that she was retaliated against by receiving a poor evaluation and being denied her yearly raise and bonus.  [*Id.*, PageID.384-85].  She complains that she was given additional duties in 2014, but that Stolzenfeld and McKee-Hessel refused to give her a raise or pay her overtime.  [*Id.*, PageID.387-89].  Bush further alleges that Stolzenfeld and McKee-Hessel denied her request for flextime, while approving such requests for white employees.  [*Id.*, PageID.390-92].

Bush next claims that that McKee-Hessel made false statements on Bush's performance evaluation; Bush described McKee-Hessel's evaluation as "character assassination."  [*Id.*, PageID.392-93].  Afterwards, McKee-Hessel and the Lumileds' human resources manager, Cynthia Bergallo, notified Bush that the approval she had received for tuition assistance had been rescinded. [*Id.*, PageID.394].  Bush states that her position was then advertised on Monster.com.  [*Id.*, PageID.394].  She was told that she could apply for the advertised position, but it required a bachelor's degree; a white woman was hired for the position.  [*Id.*, PageID.394-95].  Bush filed an EEOC charge.  [*Id.*, PageID.395].  She states that Lumileds' management then placed her on a performance improvement plan (PIP), and she filed a new EEOC charge, alleging retaliation.  [*Id.*, PageID.395-96].

3

Bush states that, through the EEOC, Bergallo offered Bush a monetary settlement in exchange for her resignation, but she rejected the offer. [*Id.*, PageID.396-97]. Later that same month, Stolzenfeld, McKee-Hessel, and Bergallo provided Bush with 60-days' notice that she may be laid off; this type of notice is required by the Worker Adjustment and Retraining Notification Act (WARN) when an employer plans mass layoffs. [*Id.*, PageID.397]. Bush was laid off effective March 31, 2016, and she alleges that two white sales administrators over whom she had seniority were not laid off. [*Id.*, PageID.400-01]. She asserts that she was the only employee at the Farmington Hills location to be laid off. [*Id.*].

In its motion for summary judgment, Lumileds argues that Bush has failed to exhaust her EEOC remedies for the pre-2015 allegations and for her termination; that the Court should not consider her Elliott-Larsen claims; that Lumileds cannot be held liable for discrimination for the period before Bush became a permanent employee in March 2013; and that Bush otherwise fails to present sufficient evidence of discrimination or retaliation. For the reasons stated below, the Court finds Bush's pre-2015 allegations and her termination should be considered under Elliott-Larsen, but that summary judgment of all her claims should be granted.

4

### III.   Analysis

### A. <u>Summary Judgment Standard</u>

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial.  *Id.* at 324.  The Court must view the factual evidence in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  But "[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009).

5

A scintilla of evidence is also insufficient; "there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252. And "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott,* 550 U.S. at 380.

## B. Exhaustion of EEOC Remedies

Bush attached her EEOC charges to her initial complaint. [ECF No. 1, PageID.9-12. She filed her first charge in September 2015 and amended it in December 2015 (471-2015-03330), and she filed another charge in November 2015 (471-2016-00543). [*Id.*].

Bush's September 2015 EEOC charge alleges that her supervisor approved her tuition reimbursement in August 2015, but that after Bush wrote a letter later that month expressing disapproval of her performance review, she received notice the following month that her tuition approval had been rescinded. [*Id.*, PageID.9]. Her November 2015 EEOC charge alleged that she was also retaliated against for filing her earlier EEOC charge. [*Id.*, PageID.10-11]. The retaliation she alleged was that Lumileds issued a posting for the job that she had performed for four years, and told her that she could apply for it, then hiring someone for that position at a

6

higher pay rate, and placed her on a performance improvement plan (PIP). [*Id.*,].  Bush also claimed that she was denied adequate compensation. [*Id.*].

In her December 2015 charge, she again stated that her job was posted after complaining of racial discrimination, and that she was required to use vacation time instead of flextime even though flextime was supposed to be available to all employees.  [*Id.*, PageID.12].  In her charges, Bush identified the dates of the alleged discrimination as occurring between July and September 2015. [*Id.*]. The EEOC issued right to sue letters in May 2016, stating that it could not conclude that the information it had obtained established violations of the relevant statutes. [*Id.*, PageID.13].

A plaintiff alleging discrimination under Title VII must exhaust all administrative remedies through the EEOC before bringing suit in federal court.  *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003).  The EEOC charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of."  *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (citing 29 C.F.R. § 1601.12(b)).  And "a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge."  *Id.*  An "EEOC complaint should be liberally construed to encompass all claims reasonably expected to grow

7

out of the charge of discrimination." *Randolph v. Ohio Dept. of Youth Services*, 453 F.3d 724, 732 (6th Cir. 2006). But in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002), the Supreme Court rejected a court of appeals' holding that "so long as one act falls within the charge filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to that act may also be considered for the purposes of liability." *Id.* at 114. It found that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify" and constitute separate actionable unlawful employment practices. *Id.*

In an earlier report and recommendation, [ECF No. 25], this Court found that Bush's claims of alleged discrimination, retaliation and harassment from 2012 through 2014 were not alleged in the EEOC charge, and could not be described as growing out the allegations she set forth in that charge. *Jenkins v. Foot Locker Inc.*, No. 12-13175, 2014 WL 1977040, at *2 (E.D. Mich. May 15, 2014), *aff'd,* 598 F. App'x 346 (6th Cir. 2015) (plaintiff's allegations regarding discrete acts of discrimination in years prior to time period alleged in EEOC charge not properly exhausted). The Court also noted that Bush did not file an EEOC charge after her termination to complain of that discrete employment action, which means that any claim of discriminatory or retaliatory termination has not been exhausted.

8

Following the Supreme Court's ruling in *Morgan*, lower courts have held that terminations that occur at different times than the discrimination alleged in previously filed charges must be separately exhausted.  *See, e.g., Moore v. Hexacomb Corp.*, 670 F. Supp. 2d 621, 632 (W.D. Mich. 2009); *Boyd v. Rich Prod. Corp.*, No. 10-2317-STA, 2011 WL 3585966, at *5 (W.D. Tenn. Aug. 16, 2011); *Wells v. Steve Madden*, Ltd., No. 3-15-0366, 2015 WL 4476597, at *2 (M.D. Tenn. July 22, 2015).  The Court thus recommended that the unexhausted claims be dismissed.  [ECF No. 25].

After Bush objected, Judge Michelson noted that an EEOC investigation may lead to the exhaustion of claims not identified in a claimant's charge.  [ECF No. 28, PageID. 354].  *See Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998) ("When the EEOC investigation of one charge in fact reveals evidence of a different type of discrimination against the plaintiff, a lawsuit based on the newly understood claim will not be barred.").  Judge Michelson noted that Bush had suggested that she had exhausted her claims through EEOC mediation.  [ECF No. 28, PageID.354].  Judge Michelson thus allowed Bush to file an amended complaint, but emphasized, "In that complaint, she may set forth additional facts indicating that claims other than those

9

presented in her three charges are exhausted."  [*Id.*, PageID.355; *see also id.*, PageID.367].

Bush's amended complaint fails to set forth sufficient facts to demonstrate that she exhausted any claims beyond those set forth in her EEOC charges.  [ECF No. 30].  In its motion for summary judgment, Lumileds argues that Bush failed to exhaust claims related to her pre-2015 conduct and to her termination.  [ECF No. 69, PageID.1124-25].  In response, Bush states, "during mediation, the attorney for Lumileds would only address the issue with the retaliation of rescinding the Plaintiff's approved tuition assistance."  [ECF No. 79, PageID.2230].  And in her amended complaint, Bush states that she was advised to wait until March 31, 2016, to amend her charge to address her layoff, and that she contacted the EEOC in April 2016 to inquire about amending her charge, [ECF No. 30, PageID.397-98]; however, she never did so.  There is thus no dispute that the pre-2015 and termination claims were not exhausted during the EEOC proceedings.  But that is not the end of the analysis because Bush's amended complaint adds state law discrimination and retaliation claims that do not require exhaustion.

10

## C. Elliott-Larsen Claims

Bush filed a motion for leave to amend her complaint in September 2016; this amendment added Bush's pre-2015 and wrongful termination claims.  [ECF Nos. 21, 21-1].  The proffered amended complaint cited Title VII and "Other federal law," including "Retaliation, Harassment & Equal Pay/Compensation Discrimination" as the governing law.  [ECF No. 21-1, PageID.199].  As noted, this Court found that the proposed claims were not exhausted, and that Bush's proffered amended complaint would therefore be futile.  [ECF No. 25, PageID.269-70].  After reviewing Bush's objections, Judge Michelson allowed Bush to file a final amended complaint, and included the following instructions:

- McKee-Hessel, Stolzenfeld, or any other Lumileds employee must not be named as a defendant;
- the counts should track those of the proposed amended complaint; for example, count one of the final amended complaint should correspond to the claim (or claims) alleged in count one of the proposed amended complaint (R. 21) but include additional factual allegations addressing the deficiencies identified in this opinion;
- the final amended complaint may not include claims that Lumileds retaliated or discriminated by (1) placing Bush on a performance improvement plan that did not resulting any loss of employment privileges, (2) not including Bush on emails about the Christmas luncheon, (3) favoring Marion on the scheduling issue, or (4) asserting insubordination;
- the final amended complaint also may not include any claims that Lumileds retaliated or discriminated against Bush based on her sex because the proposed amended complaint reveals that re-pleading any such claims would be futile;

11

- to the extent that the final amended complaint includes claims based on Bush's pre-2015 events or Bush's termination, Bush must plead facts pertaining to the EEOC investigation she referenced in her objections and proposed amended complaint;
- the factual allegations and legal theories must meet the reasonable-belief requirements of Federal Rule of Civil Procedure 11.

[ECF No. 28, PageID.366-67].

The amended complaint that followed alleges the same essential factual bases for the Title VII claims, but Bush also seeks relief for the alleged acts of discrimination and retaliation under Michigan's Elliott-Larsen Civil Rights Act.  [ECF No. 30, PageID.379-401].  Elliott-Larsen claims do not require the exhaustion of administrative remedies.  *Fuller v. Michigan Dep't of Transp.*, 580 F. App'x 416, 425 (6th Cir. 2014).  Lumileds argues that the state law claims are not properly before the court because they exceed the scope of the leave Bush was given to amend her complaint. Lumlieds cites in support *Gallagher v. San Diego Unified Port Dist.*, No. 08-CV-886-IEG(RBB), 2009 WL 2781553, at *3 (S.D. Cal. Aug. 31, 2009),  but that opinion is inapposite.  In *Gallagher*, the plaintiff sought to add a claim against a city that related to property that was outside of the city's control; that claim was patently futile.  *Id.*

Other case law better supports Lumileds' argument, however.  *See Azkour v. Bowery Residents' Comm., Inc.*, No. 13-CV-5878 (TPG), 2017

12

WL 4329629, at *3 (S.D.N.Y. Sept. 13, 2017) ("The portions of plaintiff's First Amended Complaint that exceeded the scope of this Court's leave to amend were therefore improper."); *Newland v. Morgan Stanley Private Bank, N.A.*, No. 3:15-CV-309-PLR-HBG, 2017 WL 1331293, at *4 (E.D. Tenn. Apr. 11, 2017) (striking amended complaint with allegations as to other defendants that were beyond the scope of court's leave to amend); *Hines v. Rimtec Corp.,* No. CV 07-966 (NLH/AMD), 2009 WL 10690491, at *2 (D.N.J. Dec. 17, 2009) ("[B]ecause the October 30, 2009 amended complaint contains claims beyond the scope of the Court's prior Orders granting leave to amend, the amended complaint shall be stricken.").

But in *Azkour,* the court considered the leniency afforded *pro se* litigants and construed the newly added claims and defendants as proposals, and retroactively granted the plaintiff leave to amend his complaint.  *Azkour*, 2017 WL 4329629, at *3.  Since Bush is also a *pro se* plaintiff, and since Bush would be barred from bringing most, if not all, of her Elliott-Larsen claims in state court due to the three year statute of limitations, *Fuller*, 580 F. App'x at 425, the Court finds that the most prudent course of action is to consider those claims here.

13

### D. <u>Count I—2012 Allegations</u>

*1. Temporary Employment*

In Count I of her complaint, Bush alleges discrimination in 2012 under Title VII and Elliott-Larsen. [ECF No. 30, PageID.379-82]. Title VII deems it "an unlawful employment practice for an employer" to discriminate on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a). A person aggrieved by such discrimination may bring a civil action against the "employer." 42 U.S.C. § 2000e–5(b). Elliott-Larsen likewise prohibits acts of discrimination by an "employer." M.C.L. § 37.2202.

It is undisputed that Bush worked for Lumileds, then known as Philips Automotive Lighting, through a temporary agency (Office Team) until March 2013. [ECF No. 30, PageID.374; ECF No. 69-3, PageID.1347]. Bush testified that she received her paycheck from Office Team, but that Office Team and Lumileds were her joint employers. [ECF No. 69-2, PageID.1160-61]. Both Stolzenfeld and McKee-Hessel denied that Bush was a Lumileds employee in 2012, and they state that they had no control over her pay. [ECF No. 69-23, PageID.1433; ECF No. 69-26, PageID.1634; ECF No. 69-25, PageID.1621].

Citing a Third Circuit opinion, Lumileds argues that it was not Bush's employer in 2012, and liability under Title VII and Elliott-Larsen cannot

14

attach.  *Shah v. Bank of Am.*, 346 F. App'x 831, 834 (3d Cir. 2009) (for the

purposes of Title VII and state anti-discrimination employment law,

defendant was not employer of temporary employee who was assigned

through a staffing agency).  Bush responds that Lumileds can be sued

under a joint employer doctrine under 42 U.S.C. § 1981 and the Equal Pay

Act.  But as noted, Bush's claims under Count I are alleged under Title VII

and Elliott-Larsen, not Section 1981 or the Equal Pay Act; she makes only

one passing reference to 1981 in her entire complaint, [ECF No. 30,

PageID.372], and does not mention the Equal Pay Act at all.

Still, the Sixth Circuit has emphasized that, for Title VII purposes, "In

order to determine whether a particular entity is an employer of a Title VII

plaintiff, we examine whether the alleged employer exercises control over

the manner and means of the plaintiff's work."  *Anwar v. Dow Chem. Co.*,

876 F.3d 841, 852 (6th Cir. 2017) (citation and internal quotation marks

omitted).  In *Richardson v. Century Prod., Inc.*, the court found that, from a

policy stand point, a temporary employee should be "employed" for Title VII

purposes by both the staffing agency and the employer to which the

employee is assigned.  163 F. Supp. 2d 771, 776 (N.D. Ohio 2001).  "If this

were not the case, employers like Century could circumvent federal law

forbidding discrimination by hiring all of its employees through temporary

15

employment agencies such as Manpower."  *Id.*  So Lumileds should not be absolved of its antidiscrimination obligations to Bush just because she was a temporary employee.  Having said that, the Court recommends that Lumileds' motion for summary judgment should be granted with respect to the 2012 allegations under Count I because Bush cannot establish a *prima facie* case of racial discrimination during that time period.

### 2. Prima Facie Case

In her declaration, Bush alleges that she began working at Lumileds as a temporary employee in 2010 as a part-time administrative assistant, that she was promoted to sales administrator in 2011, and that she was told that she would be hired as a permanent employee in 2012.  [ECF No. 79-2, PageID. 2439].  She states that there was a hiring freeze in 2012, but she was offered the position of customer services lead, which would be through Archway (presumably another temporary agency); she turned down the offer because she "was not interested in customer service duties."  [*Id.*, PageID.2440].  She alleges that the position of customer services lead was not posted for another person to apply, and that Marjorie Marion (who is white) was not offered the position.  [*Id.*].

Bush contends that McKee-Hessel and Stolzenfeld then contacted Office Team to say that Bush's assignment would be ending soon, and that

they did not object to her interviewing while still performing her duties.  [*Id.*].

McKee-Hessel told Bush to transfer her operational duties to Marion, and

that her sales and marketing duties would be absorbed by others.  [*Id.*].

But when the managers of original equipment (OE) sales and marketing

learned about the termination of her temporary employment, they asked the

president of the company to keep Bush in her position. [*Id.*, PageID.2441].

According to Bush, Office Team contacted McKee-Hessel "regarding my

raise," but it got no response, and this caused Bush to meet with the

company president to request the same raise that Marion had been

provided.  [*Id.*].

"Cases brought pursuant to the [Elliott-Larsen] are analyzed under

the same evidentiary framework used in Title VII cases." *Humenny v.*

*Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004).  In order to prove

discrimination under Title VII, a plaintiff needs to show that she (1) belongs

to a protected class; (2) suffered an adverse employment action; (3) was

satisfying her employer's legitimate expectations; and (4) was treated

differently from similarly-situated non-minority employees for the same or

similar conduct.  *Mitchell v Toledo Hosp.*, 964 F.2d 577, 581-83 (6th Cir.

1992).[3]  If she makes this *prima facie* case, "the burden shifts to the

defendant to offer evidence of a legitimate, non-discriminatory reason for

the adverse employment action."  *White v. Baxter Healthcare Corp.*, 533

F.3d 381, 391 (6th Cir. 2008).  If such a legitimate reason is offered, "the

burden shifts back to the plaintiff to show that the defendant's proffered

reason was not its true reason, but merely a pretext for discrimination."  *Id.*

at 391-92.

In her complaint, Bush attempts to demonstrate that she suffered an

adverse employment action because she was offered "a less desirable

position within the organization" that was not offered to Marion.  [ECF No.

30, PageID.380].  But her own declaration states that McKee-Hessel, the

customer services supervisor, offered Bush the position of customer

services lead, and that it was less desirable only because Bush was "not

interested in customer service duties."  [ECF No. 79-2, PageID. 2439-40].

In an earlier filing, Bush suggested that she did not want the lead

customer service position because it would have been through a third party

company.  [ECF No. 26, PageID.279-80].  She suggested that the offer was

---

[3] Alternatively, Bush could provide direct evidence which, if believed, would demonstrate that unlawful discrimination was least a motivating factor for the employer's actions.  *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 650 (6th Cir. 2012).  She alleges no direct evidence here.

designed to remove her from Lumileds.  But she was in actuality already a temporary employee, and her declaration states that the reason Lumileds did not make her position permanent at that time was because of a hiring freeze.  [ECF No. 79-2, PageID. 2440].  And, as stated, the only reason she now offers for describing the position as less desirable was her lack of interest in customer services duties.  [*Id.*].

Nor can McKee-Hessel and Stolzenfeld's alleged intention to terminate Bush's temporary placement constitute an adverse employment action.  [ECF No. 28, PageID.366-67].  Her complaint is against Lumileds, and Lumileds did not terminate her temporary placement; to the contrary, it later offered her a permanent position.  And while Bush alleges that Marion was paid more than she was, she offers no proof to support that allegation, and no evidence to dispute Stolzenfeld's and McKee-Hessel's claims that they had no control over Bush's pay while she was a temporary employee.  [ECF No. 69-23, PageID.1433; ECF No. 69-26, PageID.1634; ECF No. 69-25, PageID.1621].

For these reasons, summary judgment of Count I of Bush's amended complaint should be granted.

### E. Count II—Alleged Discrimination in Favor of Arends

Bush alleges in Count II of her complaint that Lumileds removed her marketing duties and transferred them to Anna Arends, a white female. [ECF No. 30, PageID.382].  She alleged that an email was issued to announce Arends duties, and that they were the exact duties that had been removed from Bush; Arends had "no other duties."  [*Id.*].  Bush claims that Arends "received a higher compensation than the Plaintiff for just the duties that were removed from Plaintiff's responsibilities," and that the position was never offered to Bush.  [*Id.*].  Bush's claims related to Arends are not viable because the two of them were not similarly situated.

#### 1. Bush's employment position with Lumileds

The Court must as an initial matter detail the nature of Bush's position with Lumileds.  According to Bush, she was hired by Lumileds to be a sales administrator in March 2013.  [ECF No. 30, PageID. 374; ECF No. 79, PageID.2216].  She alleges not only that she performed duties as a sales administrator; she asserts that she was "listed as Sales Administrator," and that that job title never changed throughout her employment.  [ECF No. 69-2, PageID.1164; ECF No. 79, PageID.2219].  Bush asserts that she mainly supported the sales and marketing teams, with "minimum duties" in operations.  [ECF No. 30, PageID.374; ECF No. 79, PageID.2217; ECF No.

20

79-2, PageID.2439, 2441-42].  Bush let it be known that she had no interest in the operations duties; she states that she told Stolzenfeld, the director of operations, that her "interest was solely sales and I had no interest in the operations team."  [ECF No. 79-2, PageID.2442].

But the evidence shows that Bush was always a member of the operations team; she was not listed as a "sales administrator."  The March 2013 hiring letter identified Bush's position as that of "Administrative Support."  [ECF No. 69-3, PageID.1347].  And all of the organizational charts, from June 2013 to November 2015, show Bush as being classified as an "Office Admin."  [ECF No. 69-36, PageID.1699-1709].  Each of those charts show that her direct supervisor was McKee-Hessel, whose title was "CS Service & Office Admin Supervisor," and McKee-Hessel reported to Stolezenfeld, who is identified as the "Director of Operations."  [*Id.*].  Neither McKee-Hessel nor Stolezenfeld was assigned to the "aftermarket" or "OE/AM" marketing teams, which were separate from "operations" on the organizational charts, and which were led by different directors. [*Id.*].  Bush's duties did include assisting and supporting the sales team.  [*See* ECF No. 69-8, PageID.1363; ECF No. 69-9, PageID.1368; 69-14, PageID.1393].  Thus, the PIP documents described Bush as a "sales

administrative assistant."  [ECF No. 69-15, PageID.1396; ECF No. 69-32, PageID.1676].  But none referred to her as a "sales administrator."

Bush acknowledges that Stolzenfeld, who she correctly identified as the director of operations, hired her to work with Lumileds; she acknowledges that she reported to Stolzenfeld and McKee-Hessel, the latter of whom she correctly states was the customer services supervisor; and she acknowledges that McKee-Hessel was responsible for her performance reviews.  [ECF No. 30, PageID.374; ECF No. 69-2, PageID.1161, 1163; ECF No. 79, PageID.2217].  Bush admits that she did not report to Ann-Marie Hines, the senior marketing manager.  [ECF No. 69-2, PageID.1169].

This evidence contradicts Bush's assertion that she was classified as a sales administrator.  Bush's declaration states that she was hired as a sales administrator for the sales and marketing teams, and affiant Janice Combs also states that Bush was a sales administrator.  [ECF No. 79-2, PageID.2441, 2457].  But these assertions are "blatantly contradicted by the record," so the Court cannot adopt them for purposes of ruling on Lumiled's motion for summary judgment.  *Scott,* 550 U.S. at 380.

22

2.    *Bush and Arends were not similarly situated*

Since Bush is relying on circumstantial evidence to support her discrimination claims, she must show that she was treated differently than a similarly-situated employee who is not a member of the same protected class. *Mitchell,* 964 F.2d at 583.  The *Mitchell* court stated that, "to be deemed 'similarly-situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  *Id.*  Later, the court clarified that the employee with whom she seeks to compare herself must be similarly situated in "all relevant respect," and that the relevant criteria "depends upon the facts and circumstances of each individual case."  *McMillan v. Castro*, 405 F.3d 405, 414 (6th Cir. 2005).  In *Seay v. Tennessee Valley Auth.*, the court found that the ordinary requirement that the plaintiff and comparator have the same supervisor did not apply because a group of supervisors and managers imposed a disproportionate punishment to the plaintiff despite being fully aware of the punishment that was meter out to other employees who had committed the same violation. 339 F.3d 454, 480 (6th Cir. 2003).

23

In this case, there is no reason to deviate from the ordinary definition of a similarly-situated employee, and Arends is not similarly situated with Bush under that definition.  In late 2013, Arends was hired to be a "marketing analyst"; she was not classified as a "sales administrator," as Bush's complaint alleges.  [ECF No. 69-2, PageID. 1168; 69-4, PageID.1350; ECF No. 79-2, PageID.2470].  The November 2013 email announcing Arends' hire states that she had "previous Philips Consumer Lifestyle experience, proven entrepreneurial expertise, marketing, online-content management and project management skills," and a bachelor's degree in business administration.  [ECF No. 69-4, PageID.1350].  Arends was assigned to the marketing team and reported to marketing manager Hinds.  [ECF No. 69-5, PageID.1352; 69-36, PageID.1701-09].  In her deposition, Bush admitted that her job title was different than Arends; that unlike herself, Arends supported only the marketing team; and that, as Arends' employment progressed, she performed work that Bush had never performed.  [ECF No. 69-2, PageID.1171-74].  Bush did not have a bachelor's degree; she was two classes shy of obtaining that degree in September 2015.  [*Id.*, PageID.1287].  And Arends received a salaried position that paid well above Bush's hourly wage.  [ECF No. 69-38, 1721; ECF No. 69-39, PageID.1724].

McKee-Hessel and Stolzenfeld state that they did not hire or supervise Arends, or set her compensation. [ECF No. 69-2, PageID.1175; ECF No. 69-25, PageID.1626-27]. They also state that Arends performed a number of duties that were never assigned to Bush in that Arends was in charge of growing the aftermarket team, Arends had more comprehensive duties, and Arends had greater oversight, autonomy, and responsibility. [ECF No. 69-25, PageID.1627; 69-26, PageID.1635].

Thus, although it appears that Arends absorbed some of Bush's administrative duties, Bush and Arends were not similarly situated in all relevant respects. Arends had a business degree and marketing experience, she was hired to be a marketing analyst, she worked under a different supervisor and was assigned to a different department, and she had greater responsibilities than Bush. Summary judgment of Court II should be granted.

### F. Count III—Alleged Retaliation after Whistleblower Complaint

Count III of Bush's amended complaint states that she "filed a Whistlebower complaint" with Alyssa Gorski in human resources in December 2013. [ECF No. 30, PageID.384]. She describes the whistleblower complaint as having listed "irregularities in hiring practices, job responsibility distribution, adequate compensation and deformation of

character." [*Id.*].  After her complaint was made, Bush was provided a

"Settlement and General Release" from Lumileds, but was told that she

"was 'a valued employee' and it would be a [loss] for the organization."

[*Id.*].  She decided to remain at Lumileds, but then received a negative

performance review from Stolzenfeld, McKee-Hessel and Gorski in

February 2014, which resulted in her not receiving a raise.  [*Id.*,

PageID.385].  Bush also alleges that McKee-Hessel and Stolzenfeld

informed her that she would not receive a yearly bonus because the sales

department did not meet its yearly numbers, but that Marjorie Marion, a

white female sales administrator, received her bonus.  [*Id.*].  Bush's

complaint further states that her whistleblower complaint went missing, and

that Gorski's executive summary of her complaint did not cover the items

discussed.  [*Id.*].

In her deposition, Bush clarifies that the whistleblower complaint to

which she refers was made verbally to Gorski.   [ECF No. 69-2,

PageID.1175-76].  She testified that she also complained to Gorski that the

hiring of Arends was discriminatory. [*Id.*, PageID.1175].  But, except for

Bush's own declaration, there is no evidence in the record that Bush's

complaints to Gorski included allegations of discrimination.

The record shows that Bush's complaint to Gorski followed a December 2013 conversation that she (Bush) had with Stolzenfeld.  Bush told Stolzenfeld that she intended to focus her job duties on the sales department and that she had a "non-interest in the operations department." [*Id.*, PageID.1180].  Bush testified that Stolzenfeld did not agree that her job duties could be "completely sales," and told her that she was being insubordinate.  [*Id.*, PageID.1182].  On December 19, 2013, Bush wrote an email to Gorski stating that she (Bush) had spoken to Stolzenfeld, and that she wanted to move forward with a formal complaint regarding her treatment and position at Lumileds.  [ECF No. 79-2, PageID.2473].  Gorski wrote a summary of Bush's grievances that is dated December 20, 2013. [ECF No. 69-7, PageID.1361].

Gorski described Bush as complaining that Stolzenfeld had "threatened her with insubordination when discussing Bush's new job responsibilities," and that "management has not been fair to her."  [*Id.*]. The summary includes several specific acts of alleged unfairness that relate to Bush's pay and responsibilities, including that she "[f]elt that moving previous Marketing responsibilities to the Marketing department was due to personal reasons, and to someone she feels in not qualified"; and "[f]elt that the new responsibilities McKee-Hessel and Stolzenfeld had

27

given her to replace the Marketing responsibilities were not sufficient to fill up her time and keep her engaged."  [*Id.*].  None of her allegations of unfairness, as summarized by Gorski, included any allegations of discrimination or made any mention of race.  [*Id.*].

The record shows that Bush had an opportunity to review Gorski's summary; Bush asked for a copy in April 2014, and Gorski emailed it to her.  [*Id.*, PageID.1359].  There is no record of Bush informing Gorski that her summary was incomplete at that time.

And, in fact, the documents that Bush attaches in response to Lumileds' motion for summary judgment also fail to show that her December 19, 2013, complaint included claims of discrimination.  Bush attaches an email that Stolzenfeld wrote on December 19 that described his conversation with her; the email was directed to Lumileds' General Manager Dennis Samfilippo, Gorski and McKee-Hessel.  [ECF No. 79-2, PageID.2478].  Stolzenfeld described a one-hour discussion in which he tried to unsuccessfully "to try and support her with job responsibilities she would like to do."  [*Id.*].  He said that Bush would not tell him what she

wanted to do to support the sales team, and that he had encouraged her to speak with "Mike or Roger" to see if they would suggest something.  [*Id.*].[4]

Stolzenfeld reported that Bush told "Mike" that she was unhappy and wanted to be laid off, but was concerned about having to reimburse Lumileds for educational expenses that it had paid on her behalf.  [*Id.*]. Stolzenfeld recommended that Lumileds offer Bush the opportunity to resign immediately without Lumileds seeking reimbursement of her educational expenses.  [*Id.*, PageID.2478-79].  He reasoned that Bush had created poor morale within the office, and that Bush had wrongfully blamed him, McKee-Hessel and Mike for forcing her to take the permanent position that she had with Lumileds.  [*Id.*].

In a follow-up email the next day, Stolzenfeld urged that a decision be made regarding Bush before the end of the year, and stated, "I really do wish to do the right thing for Adrienne."  [*Id.*, PageID.2477].  Gorski wrote in response that she planned to present Bush with documents that would release Lumileds of any claims against it, and that would relieve Bush of her education payments and allow her to collect unemployment.

---

[4] Neither party identified who "Mike" or "Roger" are, but the organizational chart shows that Mike Hervey was a senior key account manager within the lamp sales department, and Roger Bird was the national sales manager. [ECF No. 69-36, PageID.1701].

[PageID.2477].  Despite the plan to have Bush sign a release of any claims, no one indicated in the emails that Bush had made any claims of discrimination.

In addition to the lack of documentation that Bush's December 2013 complaint included claims of discrimination, both Stolzenfeld and McKee-Hessel testified that they had not been told that Bush's complaint involved discrimination.  [ECF No. 69-25, PageID.1557-59, 1579, 1622; ECF No. 69-26, PageID.1639-40].

Two months later, McKee-Kessel provided Bush with a "solid" but "improvement required" evaluation.  [ECF No. 69-8, PageID.1363; ECF No. 79-2, PageID.2444].  The evaluation concluded that Bush was strongly focused on completing tasks, was good at planning, analyzing and working independently, but that she needed "to work toward being a stronger team member rather than just a strong individual."  [ECF No. 69-8, PageID.1364].  McKee-Kessel wrote that Bush was not always transparent, did not take constructive criticism well, became aggressive or disengaged when faced with conflict, and needed to show proper respect for everyone in the office.  [ECF No. 69-8, PageID.1364].  This is the evaluation that Bush alleges was retaliatory.

Lumileds argues that Bush cannot make out a *prima facie* case of retaliation.  The Court agrees.  To make a *prima facie* standards for a retaliation claim, Bush must show that she: (1) engaged in activity protected by Title VII, (2) Lumileds knew of her exercise of her civil rights, (3) Lumileds subjected her to an adverse employment action, and (4) a causal connection exists between the protected activity and the adverse employment action.  *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004).  Although no one factor is dispositive, the temporal proximity between the protected activity and the adverse employment action has been found to be enough to allow a court to infer a causal connection.  *Id.; Lee v. Cleveland Clinic Found.,* 676 F. App'x 488, 499 (6th Cir. 2017).  But the Supreme Court has imposed a heightened causation standard in retaliation cases, requiring that "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).  In other words, "'a Title VII plaintiff alleging retaliation cannot establish liability if her firing was prompted by both legitimate and illegitimate factors.'" *Seoane-Vazquez v. Ohio State Univ.*, 577 F. App'x 418, 428 (6th Cir. 2014) (quoting *Nassar*, 570 U.S. at 384 (Ginsburg, J., dissenting)).

31

If a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action, and then shifts back to the plaintiff to show that the reason proffered by the defendant is a mere pretext.  *Singfield*, 389 F.3d at 563.

Here, Bush cannot make out a *prima facie* case of retaliation.  She does not show that she suffered an adverse employment action following her whistleblower complaint, and she does not show causation.  In Count III of her complaint, Bush alleges that she received a negative performance review in order to deny her a yearly raise, and that she did not receive a yearly bonus, while Marion did receive her bonus.  [ECF No. 30, PageID.385].  Lumileds denies Bush's claim that Marion received a bonus in 2014; it states that no Farmington Hills' employee received a bonus that year.  [ECF No. 69-30, PageID.1664-65].  Bush presents no evidence to the contrary.  The parties agree that Bush was denied a pay increase as a result of this evaluation.  [ECF No. 69-2, PageID.1291; ECF No. 69-10, PageID.1373-74; ECF No. 79-2, PageID.2444].  Even so, Bush's evaluation did not result in a change in position, and her lack of pay increase did not constitute an adverse action.  *Epps v. FedEx Servs.*, 438 F. App'x 455, 458 (6th Cir. 2011) ("Because Epps's mid-fiscal year 2007

32

review did not result in a change in position or loss of pay, the negative

performance review did not constitute an adverse employment action.").

Nor can Bush show that her alleged whistleblower complaint of

discrimination caused her to receive a negative evaluation, as there is no

evidence that Stolzenfeld or McKee-Hessel knew of any complaints of

discrimination from Bush.  Since Bush does not show that her negative

evaluation constituted an adverse action or that her alleged complaints of

discrimination caused her to receive that evaluation, she fails to make a

*prima facie* case of retaliation. *Singfield*, 389 F.3d 555, 563.  Summary

judgment of Count III of her complaint should be granted.

### G. Count IV—Alleged Discrimination in Assignment of Duties

Count IV of Bush's complaint alleges that, beginning in July 2014,

she was given an unreasonable number of new duties, including some that

had previously been assigned to McKee-Hessel, but that she did not

receive a pay raise.  [ECF No. 30, PageID.387-89].  In her complaint, Bush

alleges that McKee-Hessel was paid about $30,000 more than she (Bush)

was paid.  [*Id*.].  The complaint states that Bush asked Stolzenfeld and

McKee-Hessel to give some of those additional duties to Marion, but that

they said, "'no that this was not meant for her.'"  [*Id*.].  Those supervisors

also denied Bush's requests for overtime pay, and, according to the

complaint, "[t]his is the same practice used on the Customer Service team that is primarily African American females."  [*Id.*].  Bush alleges that these actions constituted race discrimination, retaliation and unequal pay.  [*Id.*].

In her declaration, Bush's factual allegations are consistent with her complaint.  [ECF No. 79-2, PageID.2445].

Lumileds' motion does not specifically address the allegations included in Court IV, but it does argue that Bush has failed to establish that any of its actions constituted discrimination, and that her allegations of racial animus rests entirely on her personal beliefs rather than evidence. [ECF No. 69, PageID.1130-31].  As applied to Count IV, the Court agrees. Bush apparently means to assert that she was similarly situated with McKee-Hessel, and that her (Bush's) lesser pay is evidence of discrimination.  But except for stating that she took on some of McKee-Hessel's duties, Bush provides no evidence that she was similarly situated in all relevant respects McKee-Hessel, as required in order for Bush to prove discrimination. *McMillan,* 405 F.3d at 414.  Since McKee-Hessel was a supervisor over four customer service employees and two office administrators (including Bush), [ECF No. 69-36, PageID.1702], any claim that she and Bush are similarly situated in all relevant respects would be manifestly without merit.

34

Nor does Bush provide any evidence of her duties as compared to Marion's.  Her personal belief that she received disproportionately more work than Marion is not enough for a jury to find that she was discriminated against.  "It is well settled that mere personal beliefs, conjecture and speculation are insufficient to support an inference of discrimination." *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 724 (6th Cir. 2006) (internal quotations marks, brackets and citation omitted).  *See also Redlin v. Grosse Pointe Pub. Sch.*, No. 16-CV-14051, 2018 WL 2159792, at *7 (E.D. Mich. May 10, 2018) (plaintiff's feelings alone that she has a disproportionately larger workload than male employee was not enough to prove gender discrimination).

Bush's conclusory allegation that African-American customer service employees were discriminated against is also insufficient as a matter of law, as the pattern-or-practice method of proving discrimination is not available to individual plaintiffs.  *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 575 (6th Cir. 2004); *Free v. Fed. Express Corp.*, No. 215CV02404SHMTMP, 2018 WL 1189692, at *3 (W.D. Tenn. Mar. 7, 2018).

For all of these reasons, summary judgment should be granted with respect to Court VI of Bush's amended complaint.

35

## H. <u>Count V—Denial of Flextime</u>

Bush complains in Court V of her amended complaint that her

January 2015 request for flextime was unreasonably denied.  [ECF No. 30,

PageID.390].  She had requested flextime in order to attend a class on

Tuesday mornings from May through August 2015.  [*Id.*].  Bush states in

her complaint that Sarah Gasper had been granted flextime while working

on her master's degree; that Diane Romaniwe was approved for flextime to

assist with her mother's healthcare; and that Luke Rietz received flextime

to provide for childcare and complete his degree.  [*Id.*].  These employees

are all Caucasian.  [*Id.*].[5]

Bush admitted in her deposition that none of her proffered

comparators held the same position as she did; Reitz was a planner and

then a forecaster, while Rowamiw and Gasper were both planners.  [ECF

No. 69-2, PageID.1235-39].  Bush admitted that she was allowed for work

from home once a week, and that her job required her to be responsive to

requests during business hours.  [*Id.*].  Bush further acknowledged in her

deposition that managers had the discretion to approve flexible work

---

[5] The Court notes that Judge Michelson has already ruled that employees
who used flextime to take care of people at home are materially different
from Bush as it pertains to her request for flextime.  [ECF No. 28,
PageID.363].

schedules, and that approval of such a schedule was not an entitlement. [*Id.*, PageID.1229-30; ECF No. 69-34, PageID.1693].  The policy stated that flexible work arrangements were not "for every employee or every job or every group," or "[t]o create any disruption to . . . the services provided by a department."  [ECF No. 69-34, PageID.1693].

Stolzenfeld states that he denied Bush's request for flextime because it would have been disruptive to the business in that Bush need to be available during regular business hours.  [ECF No. 69-33, PageID.1686]. He also states that the flextime that Rietz, Romaniw and Gasper received allowed them to be available and responsive to the business during regular business hours.  [*Id.*, PageID.1687].

In her response, Bush states that her use of flextime would not have caused any disruption in operations; that the denial of flextime was an act of continued retaliation; and that her duties could have been performed outside of the office.  [ECF No. 79, PageID.2225-26].  But these arguments rest on personal beliefs and conjecture, and not evidence of discrimination. *Grizzell,* 461 F.3d at 724.

And Stolzenfeld's refusal to exercise his discretion to grant Bush a flexible work schedule did not amount to an adverse action as a matter of law.  "We hold that the denial of these discretionary schedule adjustments

37

is not an adverse employment action." *Blake v. Potter*, 247 F. App'x 673, 675 (6th Cir. 2007). *See also Young v. CSL Plasma Inc.*, No. 15-CV-10080, 2016 WL 1259103, at *3 (E.D. Mich. Mar. 31, 2016), *aff'd*, No. 16-1570, 2017 WL 5157230 (6th Cir. May 26, 2017) ("Young failed to plausibly explain how failing to obtain his preferred work schedule caused him to suffer an adverse employment action.").

For these reasons, summary judgment of Count V of Bush's amended complaint should be granted.

## I. Counts VI and VII—Alleged Discrimination and Retaliation in 2015 and 2016

Counts VI and VII of Bush's amended complaint describes her increased conflict with her supervisors in 2015 and 2016, another negative performance review, her tuition reimbursement being rescinded, a sales administrator being hired, Bush's placement on a performance improvement plan (PIP), her layoff from Lumileds, and her EEOC charges. The Court will address each of these incidents below.

### 1. Performance Evaluation

The Court will start where Bush does in Count V of her amended complaint—with her July 2015 mid-year review. McKee-Kessel alleged in that review that Bush had issues with transparency, that her work needed to be checked for errors, that she was hesitant to support the team, that

38

she had to be chased in order to have matters completed by deadline, and that she demonstrated a poor attitude.  [ECF No. 69-14, PageID.1387-93]. Bush wrote a lengthy response on August 18, 2015, that laid bare her unhappiness both with McKee-Kessel's evaluation of her and with having to work in the operations department.  [*Id.*, PageID.1389].  She wrote in part that McKee-Hessel's evaluation of her had "nothing to do with [her] true performance," and that she did not "require awards to be aware of my excellent job performance."  [*Id.*].  Bush wrote, "[M]y character should not be assassinated because I have no valid interest in a particular team." [*Id.*].  Bush's response did not indicate that McKee-Kessel's evaluation was based on Bush's race or that it was discriminatory.  [*Id.;* ECF No. 69-2, PageID.1262].

Prior to the Bush's August 18 response to her evaluation, she had requested tuition reimbursement and it had had been approved.  [ECF No. 69-13, PageID.1387].  But on September 1, 2015, McKee-Hessel sent Bush an email informing her that her approval for tuition reimbursement for fall 2015 had been rescinded.  [*Id.*].  Bush testified that she understood that tuition reimbursement was a discretionary benefit and that Lumileds' policy was that it was awarded to employees in good standing.  [ECF No. 69-2, PageID.1250-51].  What Bush did not know at the time was that, on August

39

28, 2015, McKee-Hessel emailed a draft PIP to Stolzenfeld and Human Resources Manager Cynthia Bergallo.  [ECF No. 69-32, PageID. 1674-81].  The PIP was not presented to Bush until October 26, 2015, but it is the same document that Bush's supervisors began drafting in August 2015 with some non-substantive edits.[6]  [*Compare id. with* ECF No. 69-15, PageID.1396-1401].  Both documents refer to McKee-Kessel's July 8, 2015, performance discussion with Bush, and both outline the specific areas that Bush needed to address that were allegedly inhibiting her ability to succeed.  [*Id.*].  On September 8, 2015, between the August 2015 initial draft of the PIP and the service of the PIP on her in October 2015, Bush filed her first EEOC charge, alleging that her tuition reimbursement was rescinded after she rejected her performance review.  [ECF No. 69-18, PageID.1411].  She stated in part, "Due to being one of the very few African American employees there I know I am held to different standards than the Caucasian employees."  [*Id.*].

After receiving her PIP, Bush emailed a rebuttal to each of the specified performance issues; her rebuttal did not allege discrimination or retaliation.  [ECF No. 69-16, PageID.1403-06].  But her November 2015

---

[6] Bush did learn in December 2015 that the original draft of the PIP was written in August 2015.  [ECF No. 30, PageID.396].

EEOC charge alleged that she was placed on a PIP in retaliation for her

September 2015 charge.  [ECF No. 69-19, PageID.1412].

Lumileds contends, and the Court agrees, that Bush cannot make out

a *prima facie* case of discrimination or retaliation arising out of these

events.  First, Bush's claims that her tuition reimbursement was retaliation

for her rebuttal to her performance review, but her rebuttal did not include

any allegations of discrimination.  [ECF No. 69-14, PageID.1387-93].

Therefore, her rebuttal was not an activity protected by Title VII, and such a

protected activity is required in order for her to make out a *prima facie* case

of retaliation.  *Singfield,* 389 F.3d 555 at 563.  Bush's first EEOC complaint

also made a generic allegation that she knew that she was held to a

different standard because of her race, without any specific evidence. Her

personal beliefs to that effect are not evidence.  *Grizzell,* 461 F.3d at 724.

Finally, Bush's placement on an improvement plan was a *de minimis*

employment action and was not materially adverse as a matter of law.

*Novotny v. Elsevier*, 291 F. App'x 698, 703 (6th Cir. 2008).

### 2.  *Hiring of Katie Wougaman*

Bush complains that Lumileds discriminated against her by hiring

Katie Wougamon, a white woman, to be a sales administrator in October

2015.  The background facts of Bush's amended complaint indicate that

41

Wougamon was paid more than was Bush, [ECF No. 30, PageID.378], and her response to the motion to summary judgment states that Wougamon was paid about $30,000 more than Bush for the "exact same job" as Bush performed, [ECF No. 79, PageID.2231].  But Bush did not explicitly allege in her amended complaint that Wougamon's hiring and greater pay constituted race discrimination.

Even if she did, Bush would not be able to make out a *prima facie* case of discrimination with respect to Wougamon's hiring.  In order to establish a *prima facie* case for discrimination in hiring, a plaintiff must show "that [s]he applied and was qualified for a job for which the employer was seeking applicants."  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Here, Bush was told that she could apply for the sales administrator position that was posted, but she did not apply for it.  [ECF No. 69-2, PageID.1286-87; ECF No. 69-21, PageID. 1417].  She testified that she did not apply because her tuition assistance had been rescinded, and because she did not have a bachelor's degree, which was required. [ECF No. 69-2, PageID.1287].  So Bush neither applied nor was qualified for the sales administrator position.

Bush and Wougamon were also not similarly situated in all relevant respects.  Unlike Bush's position, the sales administrator position was in

42

the aftermarket sales department, and was supervised by Russell Stebbins. [ECF No. 69-36, PageID.1709].  In announcing her hire, Stebbins described Wougamon has having "almost 15 years' experience in the automotive aftermarket most recently with Delphi where she held roles as both Senior Sales Administrator and Pricing Administrator."  [ECF No. 69-22, PageID.1419].  Bush provides no evidence that she had similar qualifications.

In short, Bush did not apply for the sales administrator position, was not qualified for the position, and was not similarly situated in all relevant respects to Wougamon.  So to the extent that Bush intended to claim hiring and pay discrimination with respect to Wougamon being hired for the sales administrator position, she has not established a *prima facie* case. *McDonnell Douglas Corp.*, 411 U.S. at 802; *Mitchell,* 964 F.2d 577 at 581-83.

### 3. Bush's Layoff

Bush lastly argues that she was terminated in March 2016 due to racial discrimination and retaliation for her EEOC charges.  She was notified in a January 2016 WARN letter that Lumileds was restructuring "to respond to business and market conditions," and that she may be terminated as of March 31, 2016.  [ECF No. 69-17, PageID.1408].

Lumileds asserts that Bush was not replaced after her layoff, and that Stolzenfeld and McKee-Hessel played no role in the decision by upper management outside of Farmington Hills to lay her off.  [ECF No. 69-26, PageID.1638; ECF No. 69-33, PageID.1688-89].  In fact, McKee-Hessel was laid off as part of the same work force reduction.  [ECF No. 69-23, PageID.1513; ECF No. 69-33, PageID.1689].

In support of her claim that her termination was discriminatory, Bush argues that Marion and Wougamon were not laid off, and that she had more seniority over them.  Bush also asserts that she was the only employee who was really laid off due to Lumileds' reduction in force, citing a hearsay statement from a customer service employee that McKee-Hessel planned to leave the company anyway to care for her ailing mother. [ECF No. 79-2, PageID.2457].  "[I]nadmissible hearsay evidence cannot be considered on summary judgment."  *DeBiasi v. Charter Cty. of Wayne*, 537 F. Supp. 2d 903, 911 (E.D. Mich. 2008).  And even if McKee-Hessel had planned to resign on her own accord, Bush's evidence does not refute that McKee-Hessel was laid off as part of Lumileds' restructuring.

Lumileds does not address whether Bush can establish the ordinary *prima facie* case of discrimination and retaliation case for her layoff.  Assuming that she can, her evidence is still insufficient.  For discrimination

44

claims, when a plaintiff has been discharged as part of a workforce reduction, she must show "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). *See also Peeples v. City of Detroit*, 891 F.3d 622, 634 (6th Cir. 2018) (same). A work force reduction "occurs when business considerations cause an employer to eliminate one or more positions within the company." *Barnes v. GenCorp Inc.*, 896 F.2d at 1465. The heightened burden applies even if employees outside of the plaintiff's protected class were retained in positions for which the plaintiff was qualified. *Id.* ("Our conclusion would not change even if a plaintiff additionally demonstrated that younger persons were retained in other jobs which the plaintiff was qualified to perform."). And the heightened burden is imposed if the removed employee is not replaced; "a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." *Id.*

Here, the evidence shows that two employees were displaced from the Farmington Hills location as part of a company-wide work force reduction, and that Bush was not replaced after she was laid off. The fact

45

that white employees were retained in positions for which Bush was qualified is insufficient evidence for her to meet the heightened standard for proving actionable discrimination.  *Id.*

Nor has Bush met the heightened causation standard that applies to retaliation cases; she fails to show that Lumileds' decision to lay her off was not prompted in part by its work force reduction.  "'[A] Title VII plaintiff alleging retaliation cannot establish liability if her firing was prompted by both legitimate and illegitimate factors.'" *Seoane-Vazquez*, 577 F. App'x at 428 (quoting *Nassar*, 570 U.S. at 384).  A work force reduction is considered a legitimate reason for a termination.  *Barnes*, 896 F.2d at 1465.  Thus, Bush cannot establish liability for retaliation.

## IV.   Conclusion

Lumileds' motion for summary judgment [ECF No. 69] should be **GRANTED.**

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: July 10, 2018

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation.  *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection

must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this Report and

Recommendation to which it pertains.  Not later than fourteen days after

service of objections, **the non-objecting party must file a response** to

the objections, specifically addressing each issue raised in the objections in

the same order and labeled as "Response to Objection #1," "Response to

Objection #2," etc.  The response must be **concise and proportionate in**

**length and complexity to the objections**, but there is otherwise no page

limitation.  If the Court determines that any objections are without merit, it

may rule without awaiting the response.

47

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 10, 2018.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
