UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADRIENNE BUSH,

    Plaintiff,

v.

LUMILEDS, LLC a/k/a PHILIPS
AUTOMOTIVE LIGHTING,

    Defendant.

Case No. 16-11761
Honorable Laurie J. Michelson
Magistrate Judge Elizabeth A. Stafford

## ORDER OVERRULING PLAINTIFF'S OBJECTIONS [86, 87, 88]

Adrienne Bush used to work for Lumileds, LLC. Bush alleges that while she worked there she was treated differently because of her race. She also claims that when she complained about disparate treatment, Lumileds retaliated.

Five sets of objections are now before the Court. This order addresses three of them. (The other two are the parties' objections to the magistrate judge's report and recommendation to grant Lumileds' summary-judgment motion.) In particular, Bush filed a motion to compel discovery, a motion for sanctions (for Lumileds' alleged spoliation and discovery abuses), and a motion to strike two declarations attached to Lumileds' summary-judgment motion. Magistrate Judge Elizabeth A. Stafford, to whom all pretrial matters are referred, denied all three motions. (R. 83.) Bush objects to all three denials. (R. 86, 87, 88.)

Before reviewing the Magistrate Judge's rulings, it makes sense to nail down the standard of review. None of Bush's motion to compel, to strike declarations, or for sanctions sought dispositive relief; so the Court reviews the Magistrate Judge's denial of those three motions with deference. In particular, pursuant to 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure

72(a), the Court will uphold the Magistrate Judge's order unless it is "clearly erroneous or contrary to law." *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001). And, while "the language 'contrary to law' appears to invite plenary review," "many matters such as discovery scheduling or disputes might better be characterized as suitable for an abuse-of-discretion analysis." Charles Alan Wright, *et al.*, 12 Fed. Prac. & Proc. Civ. § 3069 (2d ed.); *see also State Farm Mutual Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 255 F. Supp. 3d 700, 703 (E.D. Mich. 2017) *report and recommendation adopted* No. 14-11700, 2017 WL 3116261 (E.D. Mich. July 21, 2017).

One more word about the legal standard. In responding to Bush's objections, Lumileds suggests that Bush's objections could be overruled simply because she makes the same argument before this Court as she did before the Magistrate Judge. (R. 91, PageID.3143–3144.) Lumileds even cites some law to that effect. (R. 91, PageID.3144.)

But so long as the plaintiff's objection is specific, a party is not barred from making the same argument before the district court as before the magistrate judge. Indeed, what is discouraged is running one case past the magistrate judge and a completely differently one past the district judge. *See Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009). And if a party is barred from presenting new theories to the district court—and, as Lumileds suggests, is also barred from presenting the same theories to the district court—there would be, as the Sixth Circuit has recently pointed out, a "null set." *Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 346 (6th Cir. 2018) ("[Under the district court's reasoning] . . . [e]ither the argument is prohibited because the party did previously make that argument [before the magistrate judge], or it is prohibited because the party did not previously make that argument. The heads-I-win-tails-you-lose restrictions that the district court has imposed on objections are illogical and without legal support."). So the Court will consider the merits of Bush's objections—even if her arguments are not novel.

The Court will first consider Bush's objections relating to her motion to compel. The Court then turns to Bush's objections relating to her motion for sanctions. Lastly, the Court will examine Bush's objections relating to her motion to strike Lumileds' summary-judgment declarations.

**I.**

In her motion to compel, Bush sought information about Lumileds' hiring of Anna Arends and information about the salaries of five customer-service representatives.

**A.**

The Court starts with Lumileds' hiring of Arends.

Bush claims that Arends was the wife of a Lumileds employee and could not work in the United States unless she was granted a work visa. (*See* R. 79-2, PageID.2443.) And Bush claims that after Arends was hired, Lumileds reassigned her "exact duties" to Arends—but paid Arends more. (R. 79-2, PageID.2443.) Arends is Caucasian; Bush is African-American. Additionally, Bush alleges that she complained about the improper hiring of Arends to Lumileds' human resources, and, following her whistleblower complaint, Lumileds retaliated. (R. 79-2, PageID.2443.)

In her motion to compel, Bush asked the Magistrate Judge to make Lumileds answer this request for admission (RFA): "Admit that [Lumileds] sponsored and paid for Arrend's [sic] work authorization in accordance with USCIS regulations." (R. 58, PageID.766.)

The Magistrate Judge declined to compel Lumileds to answer. According to the Magistrate Judge, whether or not Lumileds procured a visa for Arends was "not relevant to Bush's claim of discriminatory treatment or unequal pay." (R. 83, PageID.2588.)

Bush objects. Bush again says that Arends was paid more to do the exact work she had been doing. (R. 86, PageID.2650.) And she says that if Lumileds is not required to answer the

3

RFA, Lumileds would be able to "hide whether they followed US immigration laws and if they practice what is published in the corporate handbooks." (R. 86, PageID.2650.) In her reply brief in support of her objection, Bush seems to shift ground somewhat, suggesting that an answer to her RFA is relevant to her whistleblower complaint which, in turn, is relevant to her retaliation claim. (*See* R. 96, PageID.3331.)

The Court agrees with the Magistrate Judge's decision not to compel Lumileds to answer the RFA about Arends' visa. While procuring the visa for Arends might tend to show that Lumileds had strong interest in hiring Arends, it is very weak evidence, if any, that Lumileds favored Arends over Bush because of their races. As for Bush's claim of retaliation, it is not clear how the fact that Lumileds *properly* procured Arends' visa would tend to corroborate Bush's whistleblower complaint. In any event, Arends' offer letter was produced in discovery and the letter states that Lumileds was "sponsor[ing] your application for work authorization, in accordance with USCIS regulation." (R. 58, PageID.767.) Absent evidence to the contrary, Bush's request to admit is cumulative of the offer letter.

**B.**

Bush also sought to compel information about the salary of five customer-service representatives.

Bush believes that there was disparate treatment among five customer-service representatives (CSRs) at the Lumileds office where she worked. In particular, Bush believes that Stephanie Clark, who is Caucasian, was paid more than four other African-American CSRs who had worked at Lumileds longer than Clark.

Bush sought to confirm this belief in two ways. Via four RFAs, she asked Lumileds to admit that it paid Clark a "higher wage" than each of the four African-American CSRs. (R. 58,

PageID.768–773.) And via five interrogatories, Bush asked Lumileds to state the "hourly wage" for Clark and each of the four African-American CSRs. (R. 58, PageID.773–780.) Bush did not ask Lumileds to produce documents—only to answer the four RFAs the five interrogatories. When Lumileds refused to answer asserting numerous objections, Bush moved to compel.

The Magistrate Judge denied Bush's request to compel answers to her wage questions. Regarding the four RFAs, the Magistrate Judge reasoned, "None of the claims in Bush's complaint pertain to any of those [CSRs], and the Court has already held that allegations that Lumileds discriminated against other employees is not relevant." (R. 83, PageID.2589.) The Magistrate Judge's reference to "already held" was to her earlier ruling on a different motion to compel: "other employees' complaints of discrimination are not relevant to the claims or defenses here, they are outside of the admissible scope of discovery." (R. 59, PageID.837.) In turn, the "admissible scope of discovery" reference is to Federal Rule of Evidence 404(a)(1), a rule that bars admitting evidence that shows that a person acted consistent with a general character trait on specific occasion. (*See* R. 59, PageID.836.) As for Bush's interrogatories asking Lumileds to state the hourly wages of the five CSRs, the Magistrate Judge similarly ruled: "discrimination against other employees are not relevant to [Bush's] claims." (R. 83, PageID.2589.) "And," said the Magistrate Judge, "the pattern-or-practice method of proving discrimination is not available to individual plaintiffs." (*Id.*)

Bush objects. She explains, "it was stated [in my final amended complaint] that the African American [CSRs] and the Plaintiff were treated differently than the Caucasian employees[,] [a]ll of which were supervised by Rhonda McKee-Hessel and Thomas Stolzenfeld." (R. 86, PageID.2651.) She further states that "Ms. [McKee-]Hessel and Mr. Stolzenfeld paid Stephanie Clark more than the Plaintiff and the Customer Service team." (R. 86, PageID.2651.)

5

Bush does have some basis for seeking the salary information. In her complaint, Bush implied, if not stated, that McKee-Hessel and Stolzenfeld were her supervisors. And she accused McKee-Hessel and Stolzenfeld of discriminating based on race. And then in moving to compel, Bush asserted that McKee-Hessel and Stolzenfeld "were involved in every decision of wage pay and over-time pay" and that the four African-American CSRs were paid less than Clark. (R. 64, PageID.948–949.) In other words, Bush implied, if not stated, that *her* supervisors, McKee-Hessel and Stolzenfeld, were the very people who paid African-American CSRs less than a Caucasian CSR. And, in Bush's view at least, that disparate treatment is circumstantial evidence that her supervisors held animus toward African Americans. As for Rule 404, subsection (b) of that rule permits character evidence to show "motive" and a Title VII claim is all about whether race was "a motivating factor" for the employer's decision. Moreover, it is not necessary that discoverable information be admissible. Fed. R. Civ. P. 26(b)(1).

That said, the Court is not convinced that the Magistrate Judge abused her discretion. The salary information that Bush sought—standing alone—would not be particularly probative of racial animus against Bush even if McKee-Hessel and Stolzenfeld were the ones that set CSR salaries. This is because there may have been reasons (such as work experience before joining Lumileds) for Clark to have been paid more than the four African-American CSRs even though they had been working at Lumileds longer. And even the affidavit from Janice Combs, one of the four African-American CSRs, does not establish substantial similarity between Clark and the other four CSRs. True, Combs avers that she was a "Level 3" and "Lead" CSR and that McKee-Hessel and Stolzenfeld did not pay her according to those designations. (R. 86, PageID.2675.) But Combs also suggests that Clark was a Level 2 and paid more than Level 1s: "As Ms. Clark continued to work with the group, she made it known that she was a Customer Service Representative Level 2.

Unfortunately, the other CSRs were all still a Level 1." (R. 86, PageID.2679.) If Clark was a Level 2 and was paid more than African American CSRs who were Level 1, then the pay difference would not be particularly probative of animus—the pay difference would be explained by the different levels (1 versus 2). So, while the Court does believe that there is some relevance to Bush's discovery requests, the Court cannot say that the Magistrate Judge clearly erred or abused her discretion in not compelling Lumileds to answer them. *See* Fed. R. Civ. P. 26(b)(1) (providing that parties may obtain discovery on "matter that is relevant to any party's claim or defense *and proportional to the needs of the case*" (emphasis added)).

* * *

In sum, the Court does not find that the Magistrate Judge clearly erred in denying Bush's motion to compel.

## II.

The Court thus turns to Bush's objections relating to her motion for sanctions. (R. 63, 70.)

### A.

In her sanctions motion, Bush alleged that Lumileds abused discovery or spoliated evidence in several ways.

For one, Bush claimed that Lumileds had not properly answered her discovery requests pertaining to other individuals who, like her, received a Worker Adjustment and Retraining Notification Act notice (i.e., a notice saying that she would be laid off in 60 days due to a reduction-in-force). Bush pointed out that in November 2017 discovery responses, Lumileds stated that Bush was the "only employee in the decision unit who received notice pursuant to the WARN Act in January 2016" (R. 70, PageID.1793), but then in January 2018, Lumileds changed its response to state that McKee-Hessel also "received notice pursuant to the [WARN Act] in January 2016" (R.

7

70, PageID.1792). In addition to pointing out Lumileds' changed answer, Bush also complained of Lumileds' inability to produce McKee-Hessel's WARN Act notice despite state and federal preservation requirements. (R. 70, PageID.1787, 1801; R. 77, PageID.2101.) Bush also implied that the WARN notice that she received when she was terminated from Lumileds differed from the one that Lumileds produced in discovery. (R. 70, PageID.1787, 1796, 1800.)

As a second or additional basis for sanctions, Bush asserted that Lumileds had improperly answered her requests to identify employees who received an "annual bonus in March 2014." (R. 70, PageID.1798.) Bush pointed out that in August 2017 discovery responses, Lumileds stated that Marjorie Marion "received a merit bonus" (R. 70, PageID.1798), but then, in its November 2017 discovery responses, Lumileds stated that while no one on the sales team received a "Performance Sharing Plan" bonus, "Marjorie Marion received a 3% merit-based increase in her base salary (inadvertently mischaracterized in Defendant's original answer to this Interrogatory as a merit bonus . . .)" (R. 70, PageID.1799). In addition to highlighting Lumileds' changed interrogatory answer, Bush also implied that Lumileds had improperly answered because she had asked about "annual bonus[es]" generally not Performance Sharing Plan bonuses specifically and, in fact, some employees received Annual Incentive Plan bonuses. (R. 70, PageID.1799–1800; *see also* R. 87, PageID.2774.)

As a third grounds for sanctions, Bush asserted that despite the Magistrate Judge's order to do so, Lumileds had not produced certain emails about flextime instead answering that the emails were "unable to be located." (R. 70, PageID.1801.)

In short, Bush argued that Lumileds' "continued changes in responses to interrogatories, request for production and request for admissions, altered documents and non-preserved documents" warranted sanctions. (R. 70, PageID.1802.)

8

**B.**

The Magistrate Judge disagreed. She reasoned that Bush had "not allege[d] that any specific evidence was lost or destroyed, or that Lumileds lost or destroyed particular evidence with a culpable state of mind." (R. 83, PageID.2592.)

**C.**

Bush objects. In doing so she sharpens slightly her earlier arguments. She asserts that sanctions are warranted because the WARN Act notice she received at the time of her termination is different than the one Lumileds produced in discovery. (R. 87, PageID.2684–2696.) From this she reasons that Lumileds breached its duty to preserve relevant evidence. (R. 87, PageID.2684–2696.) Bush also points to Lumileds' changed answer about who received a WARN Act notice (at first Lumileds said just her, later it said McKee-Hessel too). (R. 87, PageID.2688.) Bush highlights Lumileds' inability to produce McKee-Hessel's WARN Act notice despite federal and state requirements to preserve it. (R. 87, PageID.2689.) And Bush again raises the issue with Lumileds' responses to her "annual bonus" inquiry. She points out that (1) Lumileds initially stated that Marion received a "merit bonus," but later changed that answer, (2) Lumileds never disclosed the Annual Incentive Plan despite that her interrogatory used the broad term "annual bonus," and (3) Lumileds "still refuses to provide the list of individuals that receive[d] bonuses in March 2014." (R. 84, PageID.2690–2691.) Finally, Bush claims that there were emails relating to flextime that Lumileds has not produced or even preserved. (R. 87, PageID.2691.) She believes that this further justifies a sanction. (R. 87, PageID.2691.)

**D.**

The Federal Rules of Civil Procedure contemplate sanctions for discovery abuses and for spoliation. Rule 37(b)(2)(A) lists various sanctions, including any "just order[]," for the failure to

9

comply with an order to provide discovery. Under Rule 37(c)(1), a party's failure to supplement a discovery response precludes that party from using the information unless "the failure was substantially justified or is harmless." Rule 37(c)(1) also permits a court to "impose other appropriate sanctions" for a failure to supplement a discovery response, including those listed in Rule 37(b)(2)(A). Likewise, a failure to answer interrogatories may result in any of the Rule 37(b)(2)(A) sanctions. *See* Fed. R. Civ. P. 37(d)(3). And, under Rule 37(e), if "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it," the court may (1) "upon finding prejudice," "order measures no greater than necessary to cure the prejudice" or (2) issue harsher sanctions, including an adverse inference or even judgment, if "the party acted with the intent to deprive another party of the information's use in the litigation."

The Court starts with Lumileds' alleged failure to produce or preserve Bush's WARN Act notice. Lumileds has explained that the WARN Act notice it produced in discovery differs from the one Bush received at termination because it produced a template. (R. 91, PageID.3151.) Additionally, it appears that the differences from the template and the notice Bush actually received are not substantive. (R. 91, PageID.3151.) And even if Lumileds had a legal duty to preserve not just the template but the actual notice provided to Bush, the Court fails to see how Bush is prejudiced: she has the actual notice. And while Bush seeks to amend to add claims about WARN Act violations, as it stands, this case is not about the WARN Act.

As for the fact that Lumileds changed its answer about who received a WARN Act notice, Bush has not shown that Lumileds did not correct its response as soon as it was aware that McKee-Hessel also received one—as it is required to do under the Federal Rules. *Cf.* Fed. R. Civ. P. 37(c)(1), (d)(3). Nor has Bush shown that the mistake was anything but innocent. *Cf.* Fed. R. Civ.

10

P. 37(c)(1), (d)(3). And while Lumileds may not have preserved McKee-Hessel's notice, again, this case is not about violations of the WARN Act.

Thus, no sanctions are warranted for Lumileds' handling of Bush's discovery requests relating to WARN Act notices.

The Court likewise finds that no sanctions are warranted for Lumileds' answer to Bush's inquiry about "annual bonus[es] in March 2014." True, Bush has evidence that there were bonuses that were excluded from Lumileds' answer. (R. 87, PageID.2774.) But Bush has not shown that Lumileds' failure to include Annual Incentive Plan bonuses in its answer was for the purposes of hiding information that would have supported Bush's claims in this case. Indeed, Bush has not shown that those similarly-situated to her were eligible for an Annual Incentive Plan—and some evidence suggests otherwise (R. 87, PageID.2774; R. 69-3, PageID.1347). Perhaps Lumileds should have been compelled to provide a more complete interrogatory response, but the Magistrate Judge did not clearly err in finding that Lumileds' incomplete response did not warrant a sanction. *Cf.* Fed. R. Civ. P. 37(d)(1) (providing sanctions for "fail[ing] to serve . . . answers, objections, or written response" to interrogatories).

That leaves Lumileds' failure to produce emails about flextime requests and approvals.

Before Bush filed her sanctions motion, the Magistrate Judge ordered as follows:

> Bush requests all documents relating to Lumiled's "Weekly Out of Office Movement" for Farmington Hills for years 2014 to 2016. Bush argues that this request is relevant to her claim of discrimination arising out Thomas Stolzenfeld's alleged denial of her request for an alternative work/flextime schedule to allow her to take a class. The Court ORDERS Lumileds to produce, by the time of Stolzenfeld's deposition on January 25, 2018, all written requests for flex time/an alternative work schedule by any Farmington Hills employee, and all written approvals and denials of those requests, from 2014 to 2016. Beyond this, Bush's request is overly broad and is denied.

(R. 59, PageID.837.)

In responding to Bush's sanctions motion, Lumileds explained that it "immediately undertook an exhaustive search for any documents that met the description in the Court's Order. . . . [D]efense counsel ran several keyword searches across the Company email files for both Stolzenfeld and McKee-Hessel for the period of January 1, 2014 to December 31, 2016, in an effort to locate email correspondence in which any employee had requested, been approved for, or been denied flex-time or an alternative work schedule." (R. 73, PageID.1912.) But Lumileds could find no such emails.

Bush has not offered anything to persuade the Court that Lumileds did not conduct a good-faith, diligent search for documents that would have complied with the Magistrate Judge's order. Nor does the Court have any reason to doubt Lumileds' search results, i.e., that no responsive documents were found.

The Court, however, wondered if the reason no documents were found was because they were not preserved. So the Court ordered Lumileds to file a supplemental brief on that issue. (R. 101.)

Lumileds' supplemental brief adequately quells the Court's concern. It explains,

As Stolzenfeld described in detail in his declaration, when employees asked him for permission to use flex-time or an alternative work schedule, they typically did so verbally. He testified he did not recall any employee other than Plaintiff submitting such requests via email or otherwise in writing, and did not recall approving or denying such requests via email or otherwise in writing. Had such emails existed, they would have been retained. After Plaintiff filed her first EEOC charge in September 2015, a litigation hold was promptly placed on the email accounts of Stolzenfeld, Rhonda McKee-Hessel, and others. The litigation hold turned off any auto-delete function for the affected email accounts, and Stolzenfeld and McKee-Hessel were specifically instructed to retain all documents and communications relating to Plaintiff and her claims (electronic or hard copy). To the best of Lumileds's knowledge, the procedure was followed and no relevant documents were lost, deleted, or otherwise destroyed.

(R. 102, PageID.3452 (citations omitted).) While Lumileds' response does not directly address Bush's assertion that "emails were stored and kept in the possession of Marjorie Marion," the Court finds that Lumileds' response indicates a good-faith effort to preserve all documents it thought relevant to this lawsuit.

In short, the Court finds that sanctions are not warranted.

### III.

That leaves Bush's objections relating to the Magistrate Judge's denial of her motion to strike declarations attached to Lumileds' summary-judgment motion.

In this motion, Bush argued that Stolzenfeld's and McKee-Hessel's declarations were contrary to their deposition testimony and should therefore be stricken. (R. 78, PageID.2121.) In support, she relied on this law: "A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). Of course, Lumileds has no desire to create fact issues (it is the party moving for summary judgment). But the Court gets Bush's point: a defendant should not be allowed to change its sworn testimony to eliminate a genuine issue of material fact.

As an initial matter, the Court finds that the Magistrate Judge ruled correctly on Bush's motion. In her motion to strike, Bush made no effort to identify a statement in a declaration that differed from a statement during a deposition. Instead, she broadly stated, "Defendant[] provided Declarations of Thomas Stolzenfeld and Rhonda McKee-Hessel [that] must be stricken in [their] entirety as they contradict their own earlier sworn deposition testimonies." (R. 78, PageID.2121.) She then attached the entirety of their two declarations and the entirety of their two deposition transcripts leaving it for Lumileds or the Magistrate Judge to figure out. And even after Lumileds

13

pointed out that Bush had failed to specifically identify any pair of contradictory statements (R. 81, PageID.2488–2489), Bush made no attempt to do so by filing a reply brief. Indeed, she filed no reply brief. The Magistrate Judge thus very-sensibly ruled as follows: "[Bush] attaches Stolzenfeld's and McKee-Kessel's declarations and deposition testimony, but her one paragraph argument does not point to any contradictions within those documents. . . . The Court has no obligation to scour the documents on Bush's behalf in order to identify any contradictions." (R. 83, PageID.2593.)

In her objections, Bush has, for the first time, identified specific statements that she believes are contradictory. (R. 88, PageID.2889–2891.)

As noted, a party is not permitted to present one case to the Magistrate Judge and a completely different one to the District Judge. "Allowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act." *See Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) (quoting *Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638 (9th Cir. 1988)). This rule applies here as Bush did not even file a reply brief once Lumileds highlighted the fact that she had failed to specifically identify any pair of contradictory statements.[1]

---

[1] Out of an abundance of caution, the Court reviewed the alleged discrepancies identified by Bush. There are two possible discrepancies between declaration and deposition. (*Compare* 69-33, PageID.1686, *with* R. 69-25, PageID.1532; *compare* R. 69-26, PageID.1637, *with* R. 69-25, PageID.1598–1599.) But striking Stolzenfeld's or McKee-Hessel's declarations is not the proper remedy. Instead, in deciding Bush's motion for summary judgment, these alleged inconsistencies can be resolved by simply taking the facts in the light most favorable to Bush.

**IV.**

For the foregoing reasons the Court OVERRULES Bush's objections to Magistrate Judge's order denying her motion to compel, motion for sanctions, and motion to strike two declarations.

SO ORDERED.

Date:   September 25, 2018             s/Laurie J. Michelson
                                                     Hon. Laurie J. Michelson
                                                    DISTRICT COURT JUDGE